UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GRANVILLE BOST,

                              Plaintiff,

                                                      9:12-CV-1548
v.                                                    (TJM/TWD)

RAY ACEVEDO, ELLEN KIRKPATRICK,
BARRY E. GOLDMAN, CRYSTAL GOODMAN,

                              Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

GRANVILLE BOST
Plaintiff pro se
207 Columbia Street
Hudson, NY 12534

STEINBERG, SYMER & PLATT, LLP                        JONATHAN E. SYMER, ESQ.
Attorneys for Defendants Kirkpatrick,
Goodman and Goldman
27 Garden Street
Poughkeepsie, NY 12601

COOK, NETTER, CLOONAN,
        KURTZ & MURPHY, PC                           ROBERT D. COOK, ESQ.
Attorneys for Defendant Acevedo
P.O. Box 3939
85 Main Street
Kingston, NY 12402

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

    This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Granville Bost claims that Defendants Barry E. Goldman, Crystal Goodman, and Ellen Kirkpatrick violated his constitutional right to adequate medical care during his incarceration at the Ulster County Jail ("the Jail"). (Dkt. No. 8.) Plaintiff further contends that Defendant Ray Acevedo failed to correct the situation despite Plaintiff's complaints. *Id.* Defendant Acevedo has filed a cross-claim against Defendants Goldman, Goodman, and Kirkpatrick, contending that he is entitled to contribution and/or indemnification from them if he is found liable. (Dkt. No. 18 at 3.) Defendants Goldman, Goodman, and Kirkpatrick have filed cross-claims against Defendant Acevedo for apportionment, contribution, and/or indemnity. (Dkt. No. 29 at 1-2; Dkt. No. 30 at 1-2; Dkt. No. 31 at 1-2.)

Currently pending before the Court are motions by Defendants Kirkpatrick, Goldman, and Goodman (Dkt. No. 48) and Defendant Acevedo (Dkt. No. 52) for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, I recommend that the Court grant both motions.

## I.     FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges in the operative complaint that when he arrived at the Jail on January 6, 2012, he informed Defendant Nurse Goodman that he "had consumed a liter of Vodka the previous night," and filled out a questionnaire noting that he was diagnosed with Hepatitis C and that he took asthma medication daily. (Dkt. No. 8 at 3.) Plaintiff asserts that Nurse Goodman gave him 100 mg, four times the normal dosage, of Librium, which is a medication for alcohol withdrawal. *Id.* According to Plaintiff, during his 12-24 hour confinement in medical isolation he was given a total of 400 mg of Librium, which caused him to be "sleepy, dizzy, and ha[ve] difficulty standing." *Id.*

Defendant Goodman declares that she performed an intake assessment of Plaintiff on January 6, 2012.  (Dkt. No. 48-22 ¶ 5.)  Plaintiff reported, *inter alia*, that he had a history of Hepatitis C for which he was not under treatment and that he "was drinking more than a 1.7 liter bottle of vodka per day."  *Id.*  Plaintiff "admitted to drinking that day prior to his arrest and that he was presently under the influence of alcohol."  *Id.*  Defendant Goodman contacted Defendant Medical Director Goldman.  *Id.* ¶ 6.  In response, Defendant Goldman prescribed 100 mg of Librium "and directed that the patient be admitted to the infirmary for close management while he was in withdrawal from alcohol."  *Id.*  Defendant Goodman did not prescribe the medication, set the dosage, or administer the medication to Plaintiff.  *Id.* ¶¶ 6-7.  Defendant Goodman scheduled Plaintiff to see Defendant Goldman on January 11, 2012, regarding his history of untreated Hepatitis C.  *Id.* ¶ 8.  Defendant Goodman declares that she was not involved in any aspect of Plaintiff's care or treatment again until June 2, 2012.  *Id.* ¶¶ 9-10.

Defendant Goldman declares that he prescribed Librium to Plaintiff because Plaintiff showed "evidence of alcohol abuse and was therefore at risk of withdrawal symptoms (including delirium tremens, seizures, or cardiopulmonary arrest)."  (Dkt. No. 48-20 ¶ 9.)  He declares that "the standard of good medical care called for an infirmary admission and administration of the medication . . . for the short term relief of withdrawal symptoms."  *Id.*  Defendant Goldman declares that "[a]ny minor risk of dizziness [wa]s insubstantial in comparison to the risks associated with alcohol withdrawal."  *Id.* ¶ 10.  Defendant Goldman declares that an initial "loading dose of 100 mg was appropriate and within the standard of good medical care."  *Id.* ¶ 11.  Defendant Goldman ordered, and Plaintiff received, 150 mg on January 7, 2012, 100 mg on January 8, 2012, and 75 mg on January 9, 2012.  *Id.* ¶¶ 12-13.  Defendant Goldman prescribed 50

mg for January 10, 2012, but Plaintiff did not receive that day's medication. *Id.* ¶¶ 12, 14.

Accordingly, Plaintiff received a total of 425 mg of Librium, tapered over three days. *Id.* ¶ 14.

Defendant Goldman declares that "[t]hese doses were consistent with the standard of care.

Indeed, up to 300 mg *per day* may be given for symptoms of acute alcoholism withdrawal after

the loading dose is administered." *Id.* ¶ 15 (emphasis in original).

Plaintiff's medical records do not document any signs of weakness, restlessness,

sweating, shakiness/muscle twitching, anxiety, ataxia, drowsiness, vomiting, nausea, nystagmus,

confusion, or slurred speech from January 6 through January 9, 2012, when he was housed in the

infirmary. (Dkt. No. 48-20 ¶ 16.) The records note that Plaintiff had tongue tremors on January

8 and 9, 2012, consistent with alcohol withdrawal. (Dkt. No. 48-17 at 10; Dkt. No. 48-20 ¶ 16.)

Plaintiff's temperature, pulse, blood pressure, and respiration rates were all recorded as normal

from January 6 though 9, 2012. (Dkt. No. 48-17 at 10-11, 14; Dkt. No. 48-20 ¶ 17.) Plaintiff

complained of dizziness on January 9, 2012. (Dkt. No. 48-17 at 11.)

Plaintiff was discharged from the infirmary on January 9, 2012. (Dkt. No. 48-17 at 11.)

Plaintiff claims that when he was moved to general population he still had an unsteady gait, and

despite requests to the medical department he did not receive a response. (Dkt. No. 8 at 4.)

Defendant Goldman declares that he was "not informed of any such calls." (Dkt. No. 48-20 ¶

19.)

Plaintiff alleges that he "fell due to the effects of the drug" on his way to a court

appearance on January 9, 2012. (Dkt. No. 8 at 3.) Plaintiff alleges that despite his complaints

that he injured his back in this fall, he was not examined, or asked what caused the fall. *Id.*

Instead Defendant Nursing Supervisor Kirkpatrick simply told the officer to "get him up off the

floor!" *Id.* That same morning, while in court, Plaintiff again began to fall but was caught by his lawyer. *Id.* at 3-4.

Plaintiff submitted a sick call request on January 9, 2012. (Dkt. No. 48-17 at 22.) He stated that "I have falling [sic] three . . . times and complained about severe pain in my back. I was picked up from the floor and believe this enhanced the situation. I have requested to see a doctor or have x-rays done. This has been denied." *Id.* Defendant Goldman declares that he was not advised of any request to see him about any falls as indicated in the sick call request. (Dkt. No. 20 ¶ 20.)

Plaintiff was seen about the sick call request at 1:00 a.m. on January 10, 2012. (Dkt. No. 48-17 at 70.) Plaintiff stated that he wanted to talk to someone, but that the next day would be fine. *Id.* Defendant Goldman declares that he was not involved in that treatment. (Dkt. No. 48-20 ¶ 21.)

A non-party nurse saw Plaintiff at 8:15 a.m. on January 10, 2012. (Dkt. No. 48-17 at 70.) She assessed Plaintiff and recommended increased fluids. *Id.* Defendant Goldman declares that he was not involved in that treatment. (Dkt. No. 48-20 ¶ 22.)

Defendant Nurse Kirkpatrick declares that she examined Plaintiff at 10:00 a.m. on January 10, 2012. (Dkt. No. 48-21 ¶ 6.) Defendant Kirkpatrick made a detailed note that stated:

> Called to Zone 4 to assess IM returning from court - "felt dizzy and slid to floor". On arrival [inmate] alert - orient x 3. Sitting [with] back to wall - sm abr R knee - [no] bleeding - assisted to stand and [ambulated] to cell without difficulty - stated he has been dizzy since admission [secondary to] "medical giving him meds" - med in question is Librium [secondary to inmate's] statement of daily alcohol use - "1.7 liters Vodka daily". [Inmate's vital signs within normal limits] - orthostatic vital signs taken 118/70 lying and sitting, [pulse] 60 lying and sitting. Pulse ox 99. IM encouraged to [increase] fluids - IM then stated, "I have pain in R side [secondary to] fall this

morning in cell" - no [documentation] in officers log. As per Officer
Avery - [after] incident in booking this morning - [inmate ambulated]
to van - no difficulty - IM demands x-ray s/p fall (?) LS spine. X-ray
will be obtained. Demands to see M.D. for liver problem. States
[history of] Hep C - no [treatment] - no outside MD - no meds - IM
informed that he will be placed on [chronic care] list and will see MD
as per [schedule]. IM then stated "You lucked out last time & I didn't
win my lawsuit - it won't happen this time." Encounter ended [with]
reminder to [increase] fluids and [change] positions slowly.

*Id.* (all punctuation in original). In Defendant Kirkpatrick's opinion, Plaintiff "did not appear to

be seriously injured from his fall or falls. He was ambulating well and had no signs of significant

injury." *Id.* ¶ 7. However, Defendant Kirkpatrick honored Plaintiff's request and put in a request

for an order for an x-ray of Plaintiff's lumbosacral spine. *Id.* Regarding Plaintiff's dizziness, it

was Defendant Kirkpatrick's opinion that it was caused by dehydration rather than the Librium.

*Id.* ¶ 8. Accordingly, Defendant Kirkpatrick encouraged Plaintiff to increase his fluids. *Id.*

Regarding Plaintiff's Hepatitis C, Defendant Kirkpatrick declares that "it is customary and good

practice for the inmates to be scheduled to be seen by the doctor within a few weeks of obtaining

a history of Hepatitis C." *Id.* ¶ 9.

Plaintiff alleges that on January 11 or January 12 he fell again and received no response

to his requests for medical evaluation and treatment. (Dkt. No. 8 at 4.)

Plaintiff asserts that in addition to the requests for medical care mentioned above, he

"placed in approximately 4 sick call slips to see the doctor" but only saw Defendant Nurse

Goodman "days after the incident!" (Dkt. No. 8 at 4.) When he "finally saw" Doctor Goldman,

Goldman was "hesitant to prescribe medication because of the Hepatitis" and Plaintiff was

"made to suffer the pain from what [Doctor Goldman] diagnosed to be muscle strain." *Id.* In

response to Plaintiff's complaints of "extreme pain," Doctor Goldman told him to "take warm

showers!" *Id.* Plaintiff admits that Doctor Goldman ordered blood tests, x-rays, and urinalyses in response to Plaintiff's complaints regarding the over-medication. *Id.* Plaintiff claims, however, that Doctor Goldman would not start treatment for his Hepatitis C because he was "getting out soon" and the "treatment [would] last much longer th[a]n [he would] be incarcerated." *Id.*

Defendant Goldman declares that he saw Plaintiff on January 11, 2012. (Dkt. No. 48-20 ¶ 27.) He noted Plaintiff's complaint that he believed he had fallen three times from the effects of his medication, Plaintiff's complaint of back pain, and Plaintiff's history of Hepatitis C and asthma. *Id.* Defendant Goldman examined Plaintiff and ordered extensive testing. *Id.* ¶¶ 27-28. Based on the results of that examination and testing, Defendant Goldman declares that "it was and is my opinion that [Plaintiff] was not demonstrating active Hepatitis C symptoms or liver damage." *Id.* ¶ 29. Defendant Goldman declares that he ordered an x-ray of Plaintiff's lumbar spine, which was performed on January 12, 2012. *Id.* ¶ 33. The radiologist reviewed the films and reported that the lumbosacral spine was entirely normal. (Dkt. No. 48-17 at 43.)

Defendant Goldman declares that proper Hepatitis C treatment "requires at least twelve consecutive weeks of strict compliance with daily injections of Interferon . . . . If . . . tests confirm that the patient has responded partially to the drug, then the injections must be continued daily for six months to a year." (Dkt. No. 48-20 ¶ 30.) Defendant Goldman advised Plaintiff to arrange for a consultation with a gastroenterologist or infectious disease specialist upon release. *Id.* ¶ 31. Defendant Goldman declares that "[i]t was not, and is not, my opinion that his health would be at significantly increased risk if he continued to defer treatment for the few weeks he was housed at the Ulster County Jail." *Id.*

On January 13, 2012, at 11:00 a.m., Plaintiff put in a medical sick call request asking for information about the side effects of Librium. (Dkt. No. 48-17 at 20.) He was seen at 8:45 a.m. on January 14, 2012. *Id.* Defendant Goldman declares that he was not involved in that complaint or treatment. (Dkt. No. 48-20 ¶ 34.)

Plaintiff submitted another medical sick call request at 3:00 p.m. on January 13, 2012, requesting that he be weighed. (Dkt. No. 48-17 at 21.) The nurse deferred a weight check until Plaintiff's next annual exam because he had been weighed two days earlier. *Id.* Defendant Goldman declares that he was not involved with that complaint or treatment. (Dkt. No. 48-20 ¶ 35.)

Plaintiff submitted another medical sick call request at 6:00 p.m. on January 13, 2012, asking for his x-ray results and advising that he was experiencing extreme back pain. (Dkt. No. 48-17 at 19.) He was seen by a nurse the next morning at 8:45 a.m. *Id.* She assessed the problem as an old contusion without radiating pain or paresthesias. *Id.* She advised rest and offered pain medication, which Plaintiff refused. *Id.* She also recommended hot showers and compresses. *Id.* Defendant Goldman declares that he was not involved in this care and treatment. (Dkt. No. 48-20 ¶ 36.)

On January 16, 2012, Plaintiff submitted a medical sick call request stating that he was in severe pain and wanted an MRI. (Dkt. No. 48-17 at 18.) A nurse responded on January 17, 2012, and put Plaintiff on the list to see Defendant Goldman to discuss the issue. *Id.* Defendant Goldman declares that he was not involved with that complaint or treatment. (Dkt. No. 48-20 ¶ 37.)

Plaintiff alleges that he complained and filed multiple grievances, sent a letter to

Warden Acevedo, and filed sick call slips every day for two weeks before again seeing the doctor. (Dkt. No. 8 at 5.) At that point Doctor Goldman "finally scheduled a M.R.I." *Id.* The record shows that Plaintiff submitted a grievance on January 19, 2012, stating that he was in severe pain and had not had an MRI. (Dkt. No. 48-19 at 17.)

Defendant Goldman saw Plaintiff on January 24, 2012. (Dkt. No. 48-20 ¶ 40.) Defendant Goldman prescribed Mobic (a nonsteroidal anti-inflammatory drug with analgesic properties) and Prilosec for pain. *Id.* Defendant Goldman's opinion was that "[a]n MRI [wa]s not indicated for pain of only a few weeks, where the recent x-ray was negative." *Id.* ¶ 41.

On January 30, 2012, Plaintiff submitted a medical sick call request stating that he "would like to cancel all meds. Pain is still present. I would like to know why I have pain, no[t] cover pain up!" (Dkt. No. 48-17 at 17.) Plaintiff failed to appear to receive his Mobic or Prilosec at 9:00 a.m. and 9:00 p.m. on February 1, 2012. *Id.* at 47.

Defendant Goldman saw Plaintiff on February 1, 2012. (Dkt. No. 48-20 ¶ 43.) Defendant Goldman ordered an x-ray of Plaintiff's hips "to determine if there was problem causing the pain arising from a hip defect." *Id.* The x-ray was performed on February 2, 2012, and was entirely normal. (Dkt. No. 48-17 at 45.)

On February 2, 2012, at 9:00 a.m., Plaintiff refused his Mobic and Prilosec. (Dkt. No. 48-17 at 39.) He reported that he was taking hot showers to deal with the pain, with some relief. *Id.* at 35. A nurse counseled him that he would have continued pain issues if he kept refusing his pain medication. *Id.* Defendant Goldman declares that he was not involved in that treatment. (Dkt. No. 48-20 ¶¶ 46-47.)

Defendant Goldman saw Plaintiff on February 9, 2012, regarding his pain and his refusal

of medication.  (Dkt. No. 48-20 ¶ 48.)  At that time, Defendant Goldman put in a request for an MRI.  *Id.*  The request was approved on February 10, 2012.  *Id.* ¶ 50.

On February 21, 2012, Plaintiff underwent an MRI.  (Dkt. No. 48-20 ¶ 52.)  Plaintiff alleges that although the results were given to the escorting officer, Plaintiff did not receive the results until June 2012.  (Dkt. No. 8 at 5.)  He was also not provided any information about his injuries, the blood testing, or the urinalysis.  *Id.*

On February 22, 2012, the radiologist prepared a report stating that the thoracic spine was unremarkable, that there was a high signal in the L1 vertebral body consistent with a benign growth, that there were mild degenerative disc bulges resulting in bilateral neuroforaminal narrowing with a small left posterior annular tear at L5-S1, as well as heterogeneous T1/T12 marrow signal intensity that most likely represented conversion of hematopoietic marrow such as in the setting of anemia or sleep apnea.  (Dkt. No. 48-17 at 32-34.)  An infiltrative process was considered less likely.  *Id.* at 33.

On February 23, 2012, Defendant Kirkpatrick received Plaintiff's MRI report.  (Dkt. No. 48-21 ¶ 12.)  She reviewed it and noted that there were no urgent findings reported by the radiologist.  *Id.*  She placed the report in the doctor's folder to be reviewed at Plaintiff's next visit, which was scheduled for February 28, 2012.  *Id.*

Plaintiff was released from the Jail on February 25, 2012.  (Dkt. No. 48-20 ¶ 55.)  On Defendant Goldman's next visit to the Jail, he reviewed Plaintiff's MRI report.  *Id.* ¶ 56.  When he learned that Plaintiff had been released, he "noted [his] recommendation that the plaintiff should follow with his primary care physician regarding these results on the MRI report, evidencing [his] intention that [Plaintiff] be notified by letter or telephone call."  *Id.*  Defendant

10

Goldman declares that if Plaintiff never received a letter or telephone call, "this was not my intention, as evidenced by my note, but was a communications/clerical error." *Id.* ¶ 57.

Plaintiff returned to the Jail on May 16, 2012. (Dkt. No. 48-18 at 25-26.) Upon intake screening, a nurse scheduled Plaintiff for a visit with the chronic complaint clinic and called Defendant Goldman regarding Plaintiff's asthma. (Dkt. No. 48-18 at 5; Dkt. No. 48-20 ¶ 59.) Defendant Goldman issued a telephone order for Plaintiff's asthma medication. (Dkt. No. 48-18 at 10; Dkt. No. 48-20 ¶ 59.)

Plaintiff alleges that on May 20, 2012, he began complaining of a lump forming in his back, but that he did not see Doctor Goldman until June 14, 2012. (Dkt. No. 8 at 5.) According to Plaintiff, "[n]o treatment was rendered until plaintiff informed medical staff at the Downstate Reception Facility in July, 2012." *Id.*

On May 27, 2012, at 9:00 p.m., Plaintiff requested a medical visit regarding an allergic reaction and asked to receive his MRI results. (Dkt. No. 48-18 at 17.) Non-Defendant Nurse D'Aprile saw Plaintiff on May 28, 2012, in response to the request. *Id.* She noted dark spots on Plaintiff's face and gave him instructions regarding dry skin care. *Id.* Her progress note does not mention the MRI. *Id.* Defendant Goldman declares that he was not involved with that sick call request or treatment. (Dkt. No. 48-20 ¶ 60.)

Plaintiff submitted a sick call request on June 1, 2012, complaining of blotches on his face, a rash, and pain in the mid to lower back. (Dkt. No. 48-18 at 16.) Plaintiff stated that he wanted to see his MRI results and a doctor. *Id.* Defendant Goodman saw Plaintiff on June 2, 2012. (Dkt. No. 48-22 ¶ 10.) Plaintiff reported that he had bumps on his back, which had started the week before. *Id.* ¶ 11. He reported that he had back pain that had possibly been aggravated

by playing ping-pong. *Id.* He asked to see the results of his MRI. *Id.* Defendant Goodman examined Plaintiff and "noted a few scaly areas and some mild swelling on the right flank." *Id.* She "advised him to follow the advice given to him by Nurse D'Aprile on May 28, to use warm compresses and hot showers, and to avoid the activities he felt had aggravated his condition." *Id.* Defendant Goodman offered Plaintiff pain medication, but he refused it. *Id.* Defendant Goodman did not consider Plaintiff "to be at a substantial risk for significant harm." *Id.*

On June 4, 2012, Plaintiff requested a doctor visit but did not specify the reason. (Dkt. No. 48-18 at 15.) Defendant Goldman declares that he was not aware of that request. (Dkt. No. 48-20 ¶ 62.)

On June 13, 2012, at 4:00 p.m., Plaintiff requested a medical sick call for an orthopedic consultation regarding pain in his back. (Dkt. No. 48-18 at 14.) Defendant Goldman saw Plaintiff on that same date at the chronic disease clinic. (Dkt. No. 48-20 ¶ 64.) Defendant Goldman examined Plaintiff and found that his vital signs were normal. *Id.* He ordered additional testing to investigate Plaintiff's condition. *Id.*

Defendant Goodman spoke to Plaintiff on June 16, 2012. (Dkt. No. 48-22 ¶ 13.) Defendant Goodman noted that Plaintiff was under ongoing treatment with Defendant Goldman, who was working up Plaintiff's MRI findings with extensive lab work. *Id.* Defendant Goodman recommended that Plaintiff continue with hot showers. *Id.* She offered Plaintiff pain medication, which he refused. *Id.*

On June 22, 2012, Plaintiff filed a grievance "requesting to see back, skin and bone specialists. ASAP!" (Dkt. No. 48-20 ¶ 66.) Defendant Goldman declares that he was not aware of those requests, but that such specialist referrals were not necessary or required by the standard

of care. *Id.* Defendant Goldman declares that "[t]he lab results needed to be returned and reviewed before a decision could be made about any follow up." *Id.*

The lab tests were returned on June 27, 2012. (Dkt. No. 48-20 ¶ 67.) Defendant Goldman declares that Plaintiff's "blood tests on June 27, 2012, . . . remained essentially the same from a liver function standpoint . . . . Lack of Hepatitis C treatment for the weeks he was incarcerated [at the Jail] had no substantial effect on the course of this condition which has remained untreated for eight years. He remained asymptomatic with regard to his Hepatitis C through his incarceration." *Id.* ¶ 32. In response to the lab results, Defendant Goldman ordered a follow-up serum protein electrophoresis test. *Id.* ¶ 67. The results of that test indicated elevated gammaglobulin. *Id.*

On June 30, 2012, Plaintiff filed a grievance about "this facility not responding to my request to see a back specialist concerning the lumps in my back, the pain, and the non-replies to my grievances." (Dkt. No. 48-20 ¶ 68.)

On July 3, 2012, Plaintiff requested medical attention for increasing pain in his lower back, left leg, and upper right back. (Dkt. No. 48-18 at 13.) On that date, he also filed a grievance stating that he had submitted a sick call request. (Dkt. No. 48-20 ¶ 69.)

July 3, 2012, was the first day that Defendant Goldman was on duty after the lab results were returned. (Dkt. No. 48-20 ¶ 70.) Defendant Goldman met with Plaintiff, discussed the lab results, ordered follow-up testing, ordered a consultation with Dr. Donovan, and prescribed Mobic for pain. *Id.*

Plaintiff was transferred from the Jail to Downstate Correctional Facility on July 9, 2012, before the follow-up testing and consultation could be carried out. (Dkt. No. 48-20 ¶ 71.)

Plaintiff filed this action on October 12, 2012. (Dkt. No. 1.) The operative complaint is the amended complaint. (Dkt. No. 8.) Defendants have answered the amended complaint. (Dkt. Nos. 18-22.) Defendant Acevedo has filed a cross-claim against Defendants Kirkpatrick, Goodman, and Goldman, for contribution and/or indemnity. (Dkt. No. 18 at 3.) Defendants Kirkpatrick, Goodman, and Goldman have answered the cross-claim and filed cross-claims for contribution and indemnification against Defendant Acevedo. (Dkt. Nos. 29-31.)

Currently pending before the Court are motions by Defendants Kirkpatrick, Goodman, and Goldman (Dkt. No. 48) and Defendant Acevedo (Dkt. No. 52) for summary judgment. Plaintiff has not filed any opposition to either motion with the Court. Plaintiff did, apparently, attempt to serve a response on counsel by email. (Dkt. No. 54.) However, as the Court previously cautioned Plaintiff, any response Plaintiff may have served on the parties was not provided to the Court and therefore cannot be considered by the Court. (Dkt. No. 56.) The Court provided Plaintiff an extension of time in which to properly provide opposition to the Court and counsel. *Id.* Plaintiff did not provide any further opposition to either counsel or the Court in response to that order. (Dkt. No. 58.) Therefore, Defendants' motions are unopposed.

## II. LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.  MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS KIRKPATRICK, GOLDMAN, AND GOODMAN

Plaintiff claims that Defendants Kirkpatrick, Goodman, and Goldman violated his constitutional right to adequate medical care by (1) prescribing an excessive dosage of Librium; (2) failing to respond to Plaintiff's complaints of back pain after his falls; (3) delaying treatment of Plaintiff's Hepatitis C; and (4) failing to promptly provide Plaintiff with lab and MRI results. (Dkt. No. 8.) Defendants move for summary judgment of these claims, arguing that Defendants Kirkpatrick and Goldman were not personally involved in the decision to prescribe Librium and that none of the Defendants acted with deliberate indifference to Plaintiff's serious medical needs. (Dkt. No. 48-2.) Defendants are correct.

### A.  Librium Dosage

Plaintiff claims that Defendants violated his constitutional right to adequate medical care

---

[1]     A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

by administering an overdose of Librium to him. (Dkt. No. 8 at 3.) Defendants Kirkpatrick, Goldman, and Goodman move for summary judgment of this claim, arguing that they were not deliberately indifferent to Plaintiff's serious medical needs. (Dkt. No. 48-2 at 5-6.) Defendants are correct.

As an initial matter, Defendants argue that neither Defendant Kirkpatrick nor Defendant Goodman was personally involved in the decision to administer Librium to Plaintiff. (Dkt. No. 48-2 at 6.) Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Here, it is undisputed that Defendant Kirkpatrick played no role in the Librium events. (Dkt. No. 48-21 ¶ 13.) It is also undisputed that Defendant Goodman did not prescribe the medication, set the dosage, or administer the medication to Plaintiff. (Dkt. No. 48-22 ¶¶ 6-7.) Accordingly, neither Defendant Kirkpatrick nor Defendant Goodman was personally involved in the decision to administer Librium to Plaintiff and cannot be held liable. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss the claim against Defendants Kirkpatrick and Goodman regarding the administration of Librium.

On the merits, as an initial matter, the Court notes that Plaintiff was a pretrial detainee for

part of the relevant period and a convicted prisoner for part of the relevant period.[2]  Medical

claims involving pretrial detainees in state custody are analyzed under the Due Process Clause of

the Fourteenth Amendment, while medical claims involving convicted prisoners are analyzed

under the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). For

practical purposes, however, the source of the analysis to be applied has little practical

consequence because the same standard is applied to Fourteenth Amendment medical claims

involving pretrial detainees as to Eighth Amendment medical claims regarding convicted

prisoners.  *See id.* at 66 (applying standard from Eighth Amendment jurisprudence to pretrial

detainee's due process claims regarding medical care).  There are two elements to a claim that

officials violated a plaintiff's right to receive adequate medical care: "the plaintiff must show that

she or he had a serious medical condition and that it was met with deliberate indifference."

*Caiozzo*, 581 F.3d at 72 (citation and punctuation omitted).  "The objective 'medical need'

element measures the severity of the alleged deprivation, while the subjective 'deliberate

indifference' element ensures that the defendant prison official acted with a sufficiently culpable

state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

Defendants argue that administering Librium did not constitute deliberate indifference to

Plaintiff's serious medical needs.  (Dkt. No. 48-2 at 5-6.)  Defendants are correct.  Medical

---

[2]        Defendants assert in their Separate Statement of Facts that Plaintiff was housed at the Jail as a pretrial detainee from January 6, 2012, to February 25, 2012, and as a post-trial detainee from May 16, 2012, to July 9, 2012.  (Dkt. No. 48-3 ¶ 1.)  Defendants cite "Ex. R, Aff. of Kirkpatrick; Ex. N, Cert. of Record of 1/16/12-2/25/12" for this proposition.  *Id.*  Under Local Rule 7.1(a)(3), "[e]ach fact listed [in the Separate Statement of Facts] shall set forth a *specific citation* to the record where the fact is established." L.R. 7.1(a)(3) (emphasis added). Defendants' Separate Statement of Facts does not comply with this rule.  Defendants do not refer the Court to any specific page or paragraph number in either of the lengthy documents they cite.

mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Stated another way, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Here, although Plaintiff asserts in his complaint that the dose he received of Librium was "4 times the normal dosage" (Dkt. No. 8 at 3), Plaintiff has not provided the Court with any evidence supporting that claim. Defendant Goldman, on the other hand, declares that "up to 300 mg *per day* [of Librium] may be given for symptoms of acute alcoholism withdrawal after the loading dose is administered." (Dkt. No. 48-20 ¶ 15.) Plaintiff was given a total of 425 mg,

tapered over three days.  *Id.* ¶ 14.  The doses given to Plaintiff were well below 300 mg per day.

On the evidence before the Court, Plaintiff has not raised a triable issue of fact that Defendants

were deliberately indifferent to his serious medical needs.  Therefore, I recommend that the Court

grant Defendants' motion for summary judgment and dismiss the claim regarding the Librium

dosage.

**B.**      **Back Pain Following Falls**

Plaintiff claims that Defendants violated his constitutional rights by failing to provide

adequate medical care after he injured his back in a series of falls.  (Dkt. No. 8 at 4-5.)

Defendants move for summary judgment of this claim, arguing that they were not deliberately

indifferent to Plaintiff's serious medical needs.  (Dkt. No. 48-2 at 6-7.)  Defendants are correct.

In cases where a "prisoner has actually received medical treatment, deliberate indifference

will not be found unless the 'medical attention rendered was so woefully inadequate as to amount

to no treatment at all.'" *Gay v. Terrell*, No. 12-CV-2925 (CBA) (VMS), 2013 U.S. Dist. LEXIS

139654, at *45, 2013 WL 5437045, at *19 (E.D.N.Y. Aug. 19, 2013[3]) (quoting *Westlake v.*

*Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).[4]  *See, e.g.*, *Perez v. Hawk*, 302 F. Supp. 2d 9, 21

(E.D.N.Y. 2004) (granting defendants' motion to dismiss where documents attached to the

complaint showed that prisoner was seen by medical staff approximately thirty times over an

eighteen-month period, given medication, and tested for various maladies).

---

[3]      LEXIS and Westlaw list different dates for this decision.  The Court has used the date used by LEXIS, which represents the date on which the Report-Recommendation containing the quoted language was issued.

[4]      The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Here, Plaintiff received frequent medical treatment while incarcerated at the Jail. He was incarcerated at the Jail from January 6, 2012, through February 25, 2012, and again from May 16, 2012, to July 9, 2012 – a total of 106 days. (Dkt. No. 48-17 at 3; Dkt. No. 48-18 at 26; Dkt. No. 48-20 ¶¶ 55, 71.) He saw medical staff thirteen times regarding his back pain. (Dkt. No. 48-17 at 19, 70; Dkt. No. 48-20 ¶¶ 27, 40, 43, 48, 52, 64, 70; Dkt. No. 48-21 ¶ 6; Dkt. No. 48-22 ¶¶ 10, 13.) He was prescribed medication and received x-rays and an MRI. *Id.* There is no indication in the record that this frequent medical treatment was so "woefully inadequate as to amount to no treatment at all." *Gay*, 2013 WL 5437045, at *19. Therefore, Plaintiff has not raised a triable issue of fact and I recommend that the Court grant Defendants' motion for summary judgment of this claim.

### C.      Hepatitis C

Plaintiff claims that Defendants violated his constitutional right to adequate medical care by failing to treat his Hepatitis C. (Dkt. No. 8 at 4.) Defendants move for summary judgment, arguing that they were not deliberately indifferent to Plaintiff's serious medical need. (Dkt. No. 48-2 at 7-8.) Defendants are correct.

Plaintiff claims that Defendant Goldman refused to treat his Hepatitis C because Plaintiff was going to be released soon and the treatment would last much longer than his incarceration. (Dkt. No. 8 at 4.) As discussed above, Defendant Goldman declares that proper Hepatitis C treatment "requires at least twelve consecutive weeks of strict compliance with daily injections of Interferon . . . . If . . . tests confirm that the patient has responded partially to the drug, then the injections must be continued daily for six months to a year." (Dkt. No. 48-20 ¶ 30.) Defendant Goldman advised Plaintiff to arrange for a consultation with a gastroenterologist or infectious

disease specialist upon release. *Id.* ¶ 31.  Defendant Goldman declares that "[i]t was not, and is

not, my opinion that [Plaintiff's] health would be at a significantly increased risk if he continued

to defer treatment for the few weeks he was housed at the Ulster County Jail."  *Id.*  He further

declares that "[l]ack of Hepatitis C treatment for the weeks [Plaintiff] was incarcerated [at the

Jail] had no substantial effect on the course of this condition which has remained untreated for

eight years.  He remained asymptomatic with regard to his Hepatitis C through his incarceration."

*Id.* ¶ 32.  Defendant Goldman has thus established that his decision not to start Plaintiff on

Hepatitis C treatment was the result of an informed medical opinion.  Plaintiff has not raised a

triable issue of fact that Defendant Goldman's medical opinion constituted deliberate

indifference to Plaintiff's serious medical condition.  Therefore, I recommend that the Court

grant Defendants' motion for summary judgment of this claim.

### D.      Lab and MRI Results

Plaintiff claims that Defendants' failure to promptly provide him the results of his

laboratory testing and MRI violated his constitutional rights.  (Dkt. No. 8 at 5.)  Defendants

move for summary judgment of this claim, arguing that they were not deliberately indifferent to

Plaintiff's serious medical needs.  (Dkt. No. 48-2 at 8-9.)  Defendants are correct.

"When the basis for a prisoner's Eighth Amendment claim is a temporary delay . . . in the

provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged

*delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone

in analyzing whether the alleged deprivation" is sufficiently serious.  *Smith v. Carpenter*, 316

F.3d 178, 185 (2d Cir. 2003) (emphasis in original).  Here, there is no evidence that the delay in

providing Plaintiff with his MRI results between February 2012 and June 2012 resulted in any

harm to Plaintiff. Indeed, Defendant Kirkpatrick characterizes the MRI report as containing "no urgent findings." (Dkt. No. 48-21 ¶ 12.) Even if there were such evidence, there is no evidence in the record that the delay in providing the reports to Plaintiff was the result of any deliberate indifference. Rather, the delay was due to the timing of Plaintiff's release, which occurred only two days after the Jail received the MRI report and before Plaintiff's next scheduled appointment. (Dkt. No. 48-20 ¶¶ 55-56; Dkt. No. 48-21 ¶ 12.) No reasonable trier of fact could conclude that the failure to notify Plaintiff of the results following his release was the result of anything more than simple negligence or clerical error. As discussed above, an "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

### E.     Cross-Claim

Defendant Acevedo has filed a cross-claim against Defendants Goldman, Goodman, and Kirkpatrick for indemnification and/or contribution. (Dkt. No. 18 at 3.) Defendants Goldman, Goodman, and Kirkpatrick move for summary judgment dismissing the cross-claim. (Dkt. No. 48 at 1.) Because I have recommended, as discussed above, dismissing all claims against Defendants Goldman, Goodman, and Kirkpatrick on the merits, Defendant Acevedo's cross-claim against those Defendants is moot. *See McNeight v. Railcar Custom Leasing, LLC*, 345 F. App'x 612, 615 (2d Cir. 2009) (finding defendants' cross-claims for indemnification to be moot in light of the dismissal of all claims against defendant); *A.B. v. Starpoli,* 929 F. Supp. 2d 266,

295 (S.D.N.Y. 2013) (dismissing as moot defendant's cross-claims for contribution and indemnification where plaintiff failed to establish defendant's liability). Therefore, I recommend that the Court grant Defendants' motion for summary judgment (Dkt. No. 48) and dismiss Defendant Acevedo's cross-claim. (Dkt. No. 18 at 3.)

## IV. MOTION FOR SUMMARY JUDGMENT BY DEFENDANT ACEVEDO

Plaintiff claims that Defendant Acevedo violated his constitutional rights by failing to properly respond to his complaints about inadequate medical care. (Dkt. No. 8 at 5.) Defendant Acevedo moves for summary judgment of this claim. (Dkt. No. 52.) For the reasons discussed below, I recommend that the Court grant Defendant Acevedo's motion.

Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely because they held positions of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted). Rather, supervisory personnel may be considered personally involved if they:

(1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[5]

Here, Plaintiff's only claim against Defendant Acevedo is that he failed to respond to Plaintiff's complaints regarding the medical care rendered by Defendants Goodman, Goldman, and Kirkpatrick. (Dkt. No. 8 at 5.) As discussed above, Plaintiff has not raised a triable issue of fact that Defendants Goodman, Goldman, or Kirkpatrick violated his constitutional rights. Therefore, Defendant Acevedo did not "fail[] to remedy [a] violation after learning of it through a report or appeal" or "create[], or allow[] to continue, a policy or custom under which [a] violation occurred" or exhibit "gross[] negligen[ce] in managing subordinates who caused [a] violation" or "exhibit[] deliberate indifference to the rights of inmates by failing to act on information indicating that [a] violation was occurring." *Colon*, 58 F.3d at 873 (citations

---

[5] In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has . . . engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

omitted).  The *Colon* categories each depend upon the existence of a constitutional violation and, as discussed above, there is no triable issue of fact that any constitutional violation occurred here. Therefore, I recommend that the Court grant Defendant Acevedo's motion for summary judgment.

ACCORDINGLY, it is

**RECOMMENDED** that Defendant Kirkpatrick, Goodman, and Goldman's motion for summary judgment (Dkt. No. 48) be **GRANTED**; and it is further

**RECOMMENDED** that Defendant Acevedo's motion for summary judgment (Dkt. No. 52) be **GRANTED**; and it is further

**RECOMMENDED** that judgment be entered in Defendants' favor on Plaintiff's complaint (Dkt. No. 8), that judgment be entered in favor of Cross-Defendants on Defendant Acevedo's cross-claim (Dkt. No. 18 at 3), and that judgment be entered in favor of Cross-Defendant on the cross-claims of Defendants Goldman, Goodman, and Kirkpatrick (Dkt. Nos. 29-31); and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Gay v. Terrell*, No. 12-CV-2925 (CBA) (VMS), 2013 U.S. Dist. LEXIS 139654, 2013 WL 5437045 (E.D.N.Y. Aug. 19, 2013).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS  REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam));

28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: February 10, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2013 WL 5437045
Only the Westlaw citation is currently available.
NOT FOR PRINT OR ELECTRONIC PUBLICATION
United States District Court,
E.D. New York.

Eric Steven GAY, Plaintiff,
v.
Warden Duke TERRELL, Dr. Newland, Lieutenant
Pasley, Correction Officer Caballero, Mr. Ittayem.
Lieutenant Grose, Correction Officer Jiminez
and Correction Officer King, Defendants.

No. 12–CV–02925 (CBA)
(VMS). | Sept. 27, 2013.

**Attorneys and Law Firms**

Eric Steven Gay, Waymart, PA, pro se.

Kelly Horan Florio, United States Attorneys Office,
Brooklyn, NY, for Defendants.

### MEMORANDUM & ORDER

AMON, Chief Judge.

**\*1** On May 1, 2012, plaintiff Eric Steven Gay, proceeding
*pro se,* filed the instant action alleging that the above-
captioned defendants violated his constitutional rights.
Currently before the Court is a Report and Recommendation
("R & R") issued by Magistrate Judge Vera M. Scanlon
on August 19, 2013 recommending that the Court grant
in its entirety defendants' motion to dismiss, or in the
alternative, for summary judgment. (DE # 54.) Gay filed
timely objections to the R & R on August 30, 2013. (DE
# 55.) Having conducted a *de novo* review of the disputed
portions of the R & R and considered Gay's objections, the
Court adopts the recommendations of the R & R in full for
the reasons stated below.

### BACKGROUND

The Court assumes the parties' familiarity with the facts
and background of this litigation, as set forth in the R
& R. In short, Gay alleges that defendants [1] violated his
constitutional rights by depriving him of certain medical care,

failing to provide a ladder for his bunk at the Metropolitan
Detention Center ("MDC"), failing to provide functioning
distress signals in some cells at the MDC, subjecting him to
allegedly unprofessional conduct and failing to give him a
copy of his medical records. On January 24, 2013, defendants
filed a motion to dismiss, or in the alternative, for summary
judgment, seeking to dismiss Gay's claims in their entirety
(DE # 39). The Court referred this motion to Magistrate Judge
Scanlon.

In her R & R, Magistrate Judge Scanlon recommends that the
Court: (1) grant Gay's motion for joinder of the United States
of America as a defendant; (2) grant summary judgment
in favor of defendants with respect to Gay's claims that
defendants violated his constitutional rights by depriving him
of adequate medical care, by failing to provide a ladder
for his bunk at the MDC, by failing to provide functioning
distress signals in some cells at the MDC, by the allegedly
unprofessional conduct of Lieutenants Gross and Pasley,
and by failing to give him a copy of his medical records;
(3) dismiss for lack of subject matter jurisdiction Gay's
negligence claims against the Government under the Federal
Tort Claims Act ("FTCA") for the actions of Lieutenant
Pasley; and (4) dismiss for lack of subject matter jurisdiction
Gay's constitutional claims against the United States, the
Bureau of Prisons ("BOP") and its officers in their official
capacity.

### DISCUSSION

#### I. Standard of Review

When deciding whether to adopt a report and
recommendation, a district court "may accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge."28 U.S.C. § 636(b)(1)(C).
To accept those portions of the R & R to which no
timely objection has been made, "a district court need
only satisfy itself that there is no clear error on the
face of the record."*Jarvis v. N. Am. Globex Fund, L.P,
823 F.Supp.2d 161, 163 (E.D.N.Y.2011)* (internal quotation
marks and citation omitted). When specific objections are
made, however, "[t]he district judge must determine *de novo*
any part of the magistrate judge's disposition that has been
properly objected to."Fed.R.Civ.P. 72(b)(3).

#### II. Gay's Objections to the R & R

**\*2** Gay objects to the portions of the R & R that recommend that the Court grant summary judgment in favor of defendants on his claims that defendants violated his constitutional rights by depriving him of adequate medical treatment and by not providing a ladder for his bunk. (Obj. at 1–2.) In stating that he has "filed a FTCA," Gay also appears to be seeking re-evaluation of the R & R's determination that he has failed to exhaust his FTCA negligence claim against the Government for the actions of Pasley. (*Id.* at 2.) Finally, Gay also states that his "objection to this Recommendation is that my case is based on me being placed on a top bunk when my medical records show that I'm epileptic and should [sic] automatically should have a bottom bunk," thereby suggesting that he objects to the R & R's failure to explicitly address this allegation. (*Id.* at 1.) For the reasons discussed below, these objections are without merit.

### A. Inadequate Medical Treatment

In his objection, Gay describes a recent attempt to exhaust his administrative remedies, initiated on June 13, 2013, regarding his complaint that he is "not receiving any medical treatment" for the pain that he is still experiencing as a result of his fall on February 11, 2012. (*Id.* at 1.) He then reiterates many of the points raised before Magistrate Judge Scanlon concerning the alleged inadequacy of his medical care, including: (1) that Dr. Newland did not prescribe adequate pain medication, (2) purported discrepancies in the findings and diagnoses of Dr. Newland and Dr. Borecky and Dr. Beaudoin, and (3) that he has yet to see a neurologist despite MDC staff claims that he is scheduled to see one. (*Id.* at 2.)

As an initial matter, the Court observes that Gay's recent attempt to exhaust his administrative remedies as to this claim is irrelevant since the R & R's recommendation to grant summary judgment in favor of defendants' on this claim was not based on a failure to exhaust. (*See* R & R at 18–19, 28–35.) The Court finds, moreover, that Gay's objections with respect to his inadequate medical treatment claim fail for the reasons set forth in the R & R. As Magistrate Judge Scanlon discusses, neither a prisoner's disagreement with his doctor over his proper treatment nor even mere medical malpractice raises an issue of constitutional dimension. *See Chance v. Armstrong.* 143 F.3d 698, 703 (2d Cir.1998); *see also Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir.2011); *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1998). "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703; *Hill,* 657 F.3d at 123.

The undisputed evidence in the record demonstrates that Gay received adequate medical care. In fact, as summarized in the R & R, Gay's medical records and his own allegations reveal that he received substantial medical care during his 2012 incarceration at MDC between February 11, 2012, the date of his alleged fall, and July 11, 2012. This medical care included approximately twenty visits with MDC medical staff, medication for pain and seizures, an eye exam, a CAT scan of his head and neck, an EKG, x-rays of his cervical spine and head, and various blood tests. (R & R at 29–34; DE # 9; DE # 11–1.) In addition, to the extent that any discrepancy between the findings of his doctors exists, nothing in the record suggests that these alleged inconsistencies altered the course of his treatment in any meaningful way. As a mere repetition of arguments already properly rejected by Magistrate Judge Scanlon in light of this evidence, Gay's objection does nothing to undermine the R & R's conclusion that his medical treatment was adequate and thus did not reflect deliberate indifference by defendants. The Court accordingly adopts Magistrate Judge Scanlon's recommendation to grant defendants' motion for summary judgment on this claim.

### B. Failure to Provide Ladder

**\*3** Gay also included his allegations concerning defendants' failure to provide a ladder in his recent attempt to exhaust. (*Id.* at 1.) The Court, however, agrees with the R & R's determination that this claim was unexhausted (R & R at 19–20)–a determination to which Gay does not object-and Gay cannot remedy his failure to exhaust by filing new administrative complaints about this issue at this stage in the litigation.

First, in order to satisfy the exhaustion requirement under the Prison Litigation Reform Act ("PLRA"), the exhaustion must be proper, that is, "in compliance with an agency's deadlines and other critical procedural rules." *See Woodford v. Ngo,* 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Ford v. Spears,* No. 10–CV–1314, 2012 WL 4481739, at \*6 (E.D.N.Y. Sept. 27, 2012). As described in the R & R, to properly initiate the formal administrative review process, an inmate must file an administrative claim within 20 days following the date on which the event forming the basis of the request occurred. (R & R at 15–16.) Gay's recent attempt to exhaust, initiated well beyond the 20–day filing period on June 20, 2013, thus does not constitute proper

exhaustion.[2] *See Torres v. Anderson.* 674 F.Supp.2d 394, 400 (E.D.N.Y.2009) (dismissing *Bivens* claim as unexhausted where plaintiff "did not file his BP–9 until more than two months after the incident" because "filing dates are 'critical procedural rules' "); *Ford,* 2012 WL 4481739, at *6 (observing that "plaintiff failed to 'properly' exhaust his administrative remedies" where his submissions "were all denied on timeliness grounds" (quoting *Woodford,* 548 U.S. at 91)).

Second, even if this attempt constituted proper exhaustion, Gay's claim would still fail as unexhausted. Where, as here, "a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed."*Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D.N.Y.2010) (citing *Neal v. Goord,* 267 F.3d 116, 121–22 (2d Cir.2001), *abrogated in part on other grounds by Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)) ("When a prisoner fails to properly exhaust his administrative remedies before filing suit, the action must be dismissed."); *see also Burgos v. Craig,* 307 Fed. App'x 469, 470 (2d Cir.2008) ("[Exhaustion] must be completed before suit is filed, and contemplating the exhaustion requirements only after filing suit is insufficient."). Gay's failure to exhaust prior to filing the instant action necessarily defeats any attempt to cure that defect now.

In any event, the Court agrees with the R & R's determination that the failure to provide Gay a ladder to access his bunk does not rise to the level of a constitutional violation, and Gay states nothing in his objection that would suggest a reason to revisit that determination.

## C. FTCA Exhaustion

By informing the Court that he "has filed a FTCA" and is "awaiting a response by October," Gay appears to be seeking re-evaluation of the R & R's determination that he has failed to exhaust his FTCA negligence claim against the Government for the actions of Pasley. (Obj. at 2.) As with exhaustion under the PLRA, however, in order to satisfy the FTCA presentment requirement, a claimant must "exhaust all administrative remedies before filing a complaint in federal district court."*Celestine v. Mount Vernon Neighborhood Health Ctr.,* 403 F.3d 76, 82 (2d Cir.2005)."Because this requirement is jurisdictional, the subsequent denial of an administrative claim cannot cure a prematurely filed action."*Grancio v. De Vecchio,* 572 F.Supp.2d 299, 310 (E.D.N.Y.2008) (citing *McNeil v. United*

*States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)); *Ford,* 2012 WL 4481739, at *9. Thus, Gay's recent filing of an administrative FTCA claim, a claim he acknowledges is still pending, does not affect the R & R's proper determination that Gay's FTCA negligence claim is unexhausted and must be dismissed for lack of subject matter jurisdiction.

## D. Failure to Initially Assign Gay to a Bottom Bunk

 **\*4** In his objection, Gay also continues to press his allegation that he should have been initially assigned to a bottom bunk due to his epilepsy, which he claims was documented in his medical records upon his entry to the MDC. (Obj. at 1.) To the extent that Gay is asserting that this is a separate claim that was not addressed in the R & R, the Court notes that it fails for many of the same reasons set forth in the R & R in disposing of Gay's other claims.

First, the Court's review of the record has uncovered nothing that suggests that Gay's epilepsy was documented in any medical records upon his arrival at the MDC. Even if there were, insofar as this claim can be construed as a *Bivens* claim these allegations were raised only in the same administrative complaints in which Gay raised his claim regarding the failure to provide a ladder and is thus likewise unexhausted (*see* R & R at 19–20). Gay fails, moreover, to establish that any of the individual defendants in this case had any knowledge of his condition let alone personal involvement in his bunk assignment. *See Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006) (noting that in *Bivens* actions, "a plaintiff must allege that the individual defendant was personally involved in the constitutional violation"); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Finally, this allegation fares no better construed as a FTCA claim since it is unexhausted for the same reasons that the R & R discussed in dismissing Gay's FTCA negligence claim stemming from the actions of Pasley. (*See* R & R at 39–42.) Accordingly, to the extent that Gay's allegation concerning his initial bunk assignment raises an independent claim, the Court concludes that the entry of judgment in favor of defendants-whether as a matter of law or for lack of jurisdiction-on that claim is warranted.

## III. Remaining Recommendations

Magistrate Judge Scanlon also recommends that the Court: (1) grant Gay's motion for joinder of the United States of America as a defendant (R & R at 12–13); and (2) grant defendants' motion for summary judgment on Gay's claims

regarding non-functioning distress signals (R & R at 19, 38–39), unprofessional conduct (R & R at 20–21,), and the failure to provide medical records (R & R at 21–22.) Neither party objects to these portions of the R & R. Having found no clear error on the face of the record, the Court hereby adopts the conclusions of these portions of the R & R.

### CONCLUSION

The Court hereby adopts the conclusions of the R & R in full. In addition, to the extent that the R & R did not dispose of Gay's claim regarding his initial bunk assignment, the Court finds the entry of judgment in favor of defendants warranted on that claim as well. Accordingly, Gay's claims are dismissed in their entirety. The Clerk of Court is directed to terminate all pending motions, enter judgment and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*5** SO ORDERED.

### *REPORT AND RECOMMENDATION*

VERA M. SCANLON, United States Magistrate Judge.

On May 1, 2012, Plaintiff Eric Steven Gay ("Plaintiff") commenced this *pro se* action pursuant to 42 U.S.C. Section 1983, alleging violations of his constitutional rights by the Metropolitan Detention Center's ("MDC") employees Warden Duke Terrell; Dr. Newland; Lieutenants Pasley and Grose; Mr. Ittayem and Officers Caballero, Hernandez, Jiminez and King (collectively, "Defendants"). The Court construes Plaintiff's claims principally under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Construed broadly, the Amended Complaint alleges that Defendants violated Plaintiff's constitutional rights by depriving him of certain medical care, by failing to provide a ladder for his bunk at the MDC, by failing to provide functioning distress signals in some cells at the MDC, by the allegedly unprofessional conduct of MDC employees, and by failing to give him a copy of his medical records. Pending before the Court is Defendants' motion to dismiss, or in the alternative, for summary judgment. *Docket No. 39.* The motion was

referred to the undersigned by Chief District Judge Anion for a report and recommendation.

For the following reasons, I respectfully recommend that Defendants' motion be granted in its entirety. I respectfully recommend that a judgment be entered in favor of Defendants on Plaintiff's claims of inadequate medical treatment, that there were insufficient ladders or functioning distress signals in the Special Housing Unit at the MDC, of unprofessional conduct against Lieutenants Grose and Pasley, and of failure to provide Plaintiff's medical records to him. I respectfully recommend that Plaintiff's claims under the Federal Tort Claims Act ("FTCA") against Lieutenant Pasley be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b) (1). I respectfully recommend that Plaintiff's claims against the United States of America, the Bureau of Prisons and its officers in their official capacity be dismissed under FRCP 12(b)(1). I also respectfully recommend that Plaintiff's motion for joinder of the United States of America as a defendant be granted.

## I. BACKGROUND

### A. FACTUAL ALLEGATIONS

### 1. ORIGINAL COMPLAINT [1]

The statements set forth here are drawn from the Complaint ("Compl."), *Docket No. 2,* and the Amended Complaint ("Am.Compl."), *Docket No. 9,* solely for purposes of the motion. The complaints lack paragraph numbers, so all citations thereto are by page number.

On May 1, 2012, Plaintiff Eric Steven Gay, while housed at the MDC in Brooklyn, New York, filed a complaint under 42 U.S.C. § 1983 against Warden Duke Terrell; Medical Supervisor Mr. Ittayem; Dr. Newland; Special Housing Unit ("SHU") Lt. Pasley; Lt. Grose and Officers Caballero, Hernandez, Jiminez and King. [2] *Docket No. 2.* The Complaint alleges that on February 11, 2012, Plaintiff attempted to climb up to his top bunk. *See* Compl. p. 5. No ladder was provided. *See id.* While climbing up, Plaintiff slipped, fell on the back of his head, and possibly injured his neck. *See id.* He was taken to an outside hospital for a CAT scan and was informed that the results were negative. *See id.* He was given two ibuprofens and was sent back to his cell with severe head and neck pain. *See id.* Plaintiff claims that on February 12, 2012, he saw Dr. Newland, who informed him that nothing was medically wrong with him and gave Plaintiff two more ibuprofens. *See id.*

**\*6** Plaintiff alleges that he spoke to Lt. Pasley and informed him that he needed a ladder to access his bunk. *See id.*Lt. Pasley told Plaintiff to write to the warden. *See id.*Plaintiff then wrote to his counselor, Ms. Anderson, about obtaining a ladder, and he allegedly did not receive a response. *See id.*Plaintiff also wrote to the warden and did not receive a response. *See id.*

On February 16, 2012, Plaintiff suffered two seizures and a blackout. *See id.*Wendell Jenkins, Plaintiff's cellmate, tried to use the distress button in the cell, but it did not work properly. *See id.*Plaintiff was taken to the medical unit, was treated by Dr. Newland, and was given a bottom bunk pass. *See id.*Plaintiff alleges that he was supposed to have had a bottom bunk pass from the beginning of his confinement at the MDC. *See id.*Dr. Newland allegedly told Plaintiff that there was nothing medically wrong with him. *See id.*

Plaintiff alleges that Officers Caballero, Jiminez and Hernandez ignored his requests for medical treatment and lied to the psychology unit by stating that Plaintiff wanted to kill himself. *See id.*

Plaintiff summarizes his most serious injuries as follows, "Lump to back of head, neck and back injury, blackouts and severe headaches, the CAT scan was taken, EKG and blood work. No other test was taken. No MRI. No anything. All the pain medicine was given was Tylenol and ibuprofen."*Id.* As relief, Plaintiff requests proper medical treatment and $1,000,000.00.

### 2. AMENDED COMPLAINT

On July 13, 2012, Plaintiff filed an Amended Complaint, dated July 10, 2012, removing Wendell Jenkins as a plaintiff and adding additional allegations.*Docket No. 9.* In the Amended Complaint, Plaintiff states that he is "filing for cruel and unusual punishment for the fact there is no ladders in the East Special Housing unit and we are forced to climb up on the bunk beds that are about 5 feet high."Am. Compl. p. 1. Plaintiff requests an MRI. *See id.*Plaintiff states that, on July 6, 2012, he spoke to Mr. Ittayem and told him that he had been requesting his medical records since February 2012 but had not yet received them. *See id.*Mr. Ittayem allegedly told Plaintiff that they had already been sent to him. *See id.*Plaintiff alleged in the Amended Complaint that he is "filing for the safety negligence of the distress buttons and ladders the Special Housing Unit does not have or is not working."*See id.* at 3. In responding to one of Plaintiff's

complaints, Lt. Grose told Plaintiff that he "should never have came to prison and he [Plaintiff] would not be in this position."*See id.*Plaintiff finds this behavior unprofessional. *See id.*Plaintiff asks the Court to send him his medical records. *See id.* at 3–4. [3]

### B. PROCEDURAL HISTORY

On May 1, 2012, Plaintiffs Eric Steven Gay and William Jenkins, proceeding *pro se*, brought this civil rights action under 42 U.S.C. § 1983 against several employees of the MDC, a federal facility. *Docket No. 1.* On June 30, 2012, the District Court construed Plaintiff's Complaint as being brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).*Docket No. 8.* The Court granted Plaintiff's application to proceed in *forma pauperis;* Plaintiff was given thirty (30) days to file an Amended Complaint. Id at 7. The Court also terminated Mr. Jenkins from the action. Id On July 13, 2012, Plaintiff filed an Amended Complaint, dated July 10,2012. *Docket No. 9.* On July 31, 2012, the Court issued an Order under the Prison Litigation Reform Act ("PLRA") to allowthe case to proceed. *Docket No. 12.*On August 7, 2012, Plaintiff filed an application requesting counsel to represent him in this action; on October 9, 2012, the Court denied his application. *Docket Nos. 14 & 29.*He again filed for a motion to have counsel appointed, but his motion for counsel was denied without prejudice on May 22, 2013. *Docket No. 50.*

**\*7** On January 9, 2013, Plaintiff filed a request to add the United States of America as a party. *Docket No. 34.*The Court deemed this request to be a motion for joinder. *See* June 7, 2013 ECF Entry. Defendants responded to this motion on June 11, 2013. *Docket No. 52.*

Defendants filed the instant motion to dismiss the Amended Complaint or, in the alternative, for summary judgment. *Docket No. 39.*Plaintiff opposed. The Court has considered all of the submissions. *Docket Nos. 39, 42–49, 52–53.*

### C. THE SUFFICIENCY OF PLAINTIFF'S AMENDED COMPLAINT WITH RESPECT TO THE DISTRICT COURT'S JUNE 30, 2012 ORDER

Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983 against federal employees of a federal facility, although Section 1983 only applies to state actors. The District Court construed Plaintiff's claims as being brought under *Bivens v. Six Unknown Named Agents of Federal Bureau ofNarcotics,*

403 U.S. 388,91 S.Ct. 1999(1971).*See Docket No. 8* at 4. As stated above, the District Court issued an Order on June 30, 2012, permitting Plaintiff to submit an Amended Complaint. *Docket No. 8.* The Order stated, "[I]f Gay decides to amend his complaint, he should make clear the appropriate *Bivens* cause of action. *See e.g. Cuoco v. Moritsugu,* 222 F.3d 99 (2d Cir.2000) (*Bivens* claim for deliberate indifference to medical needs)."*Docket No. 8* at 6. The Order stated that the Complaint in its current form was insufficiently clear on the subjective component of the relevant test for determining indifference to medical needs. *Id.* The Order stated that

> it is not clear whether the guards at issue were aware of the serious nature of [Plaintiff's] health conditions, and whether they knowingly disregarded a substantial risk of harm. As to Dr. Newland, the Complaint at first suggests that he consciously disregarded Gay's complaints of discomfort, but later states that Dr. Newland "treated [Gay] for [his] seizures" and gave him a "bottom bunk pass." Defendant "Mr. Italia" is not mentioned in the body of the Complaint at all, and Warden Terrell only appears to have been involved insofar as Gay wrote him a letter that received no response.... While the Complaint contains scattered references to most of the named defendants, it is not clear how each defendant was personally involved in denying Gay medical treatment, such that they could be liable for deliberate indifference. In his Amended Complaint, Gay must explain the personal involvement of each defendant in the alleged constitutional violation....

*Id.*In its conclusion, the Order stated, "The Amended Complaint will completely replace the original Complaint."*Id* at 7.

Plaintiff's Amended Complaint does not comply with the Order. It does not present sufficient facts about Defendants' subjective knowledge of Plaintiff's medical condition as directed by the June 30, 2012 Order. It states that Dr. Newland refused Plaintiff an MRI. *See Docket No. 9,* p. 1. It alleges that

Mr. Ittayem, when asked about Plaintiff's medical records, stated that he believed they had already been sent to Plaintiff. *See id.*It states that, when Plaintiff mentioned the lack of ladders in the SHU to Lt. Pasley, he stated that Plaintiff should write to the warden. *See id.,* pp. 1–2.It alleges that Warden Terrell did not respond to Plaintiff's request. *See id.*It states that Officers Cabellero, Hernandez and Jiminez "did not know the severity [sic] of my issue ..." Plaintiff states that Lt. Grose said to him that Plaintiff should not have come to prison because then he would not be in his present situation. *See id.* at 3. The Amended Complaint contains scattered, incomplete allegations against the individual Defendants, as did the original Complaint. It describes neither personal involvement on the part of each individual Defendant in Plaintiff's medical care nor subjective knowledge of any serious medical condition from which Plaintiff may have been suffering, as required by the Court's June 30, 2012 Order.

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW FOR *PRO SE* PLEADINGS

**\*8** "[W]hen considering *pro se* submissions, the Court should interpret them 'to raise the strongest arguments that they suggest.'"*Grosso v. Biaggi,* No. 12–CV–6118 (JMF), 2013 WL 3743482, at *2 (S.D.N.Y. July 17, 2013) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006))."Even under the heightened pleading standards set by *Iqbal* [556 U.S. 662, 129 S.Ct. 1937 (2009) ] and *Twombly* [550 U.S. 544, 127 S.Ct. 1955 (2007) ], a court is 'obligated to construe a *pro se* complaint liberally.'"*Grosso,* 2013 WL 3743482, at *2 (quoting *Harris v.Mills,* 572 F.3d 66, 72 (2d Cir.2009)); *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))). Nonetheless, a pro se complaint must state a plausible claim for relief before it is allowed to proceed. *See Harris v. Mills,* 572 F.3d 66, 73 (2d Cir.2009)."[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."*Kulak v. City of N.Y.,* 88 F.3d 63, 71 (2d Cir.1996).

### B. MOTION FOR JOINDER

"Where, as here, Plaintiff[ ] propose[s] to add new parties, the motion is governed by Rule 21 of the Federal Rules of Civil Procedure, which provides that '[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.'"*Jean–Baptiste v. U.S.,* No. 10–CV–4094, 2012 WL 3137458, at *1 (E.D.N.Y. Aug.1, 2012) (quoting FRCP 21); *see Doe v. Cuomo.,* No. 10–CV–1534 (TJM), 2013 WL 1213174, at *8 (N.D.N.Y. Feb.25, 2013) (applying FRCP 21 in *pro se* case).

## C. MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)

Defendants move to dismiss under FRCP 12(b)(1), 12(b)(6)[4] and 56, each of which has different requirements and presumptions. Under FRCP 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. *See Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000) ("A case is properly dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In reviewing a motion to dismiss under FRCP 12(b)(1), the court must accept as true all material factual allegations in the complaint, but it is not required to draw all reasonable inferences in the plaintiff's favor. *See J.S. v. Attica Cent. Schs.,* 386 F.3d 107, 110 (2d Cir.2004). Rather, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *See Makarova,* 201 F.3d at 113. In deciding a FRCP 12(b)(1) motion, the district court may rely on and refer to evidence outside the pleadings. *Id.*

## D. MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56

**\*9** Summary judgment is appropriate when the evidence before the court "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."FRCP 56(a). A genuine dispute of fact exists when there is sufficient evidence such that a reasonable trier of fact could not resolve the issue in the non-movant's favor, and an issue is 'material' when its resolution might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,248, 106 S.Ct. 2505, 2510 (1986). Initially, the moving party bears the burden of demonstrating that there is no genuine issue of fact or that there is an absence of evidence to support the nonmoving party's case. *See id.*Once the moving party meets its initial burden, the onus shifts to the nonmoving party to "set forth specific facts showing that there is a

genuine issue for trial."*Anderson,* 477 U.S. at 256, 106 S.Ct. at 2510. The party opposing summary judgment must set forth evidence demonstrating a genuine issue for trial, and may not rely only on allegations in its pleadings. *See Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006)."Summary judgment is warranted when, after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue of material fact."*Sledge v. Kooi,* 564 F.3d 105, 108 (2d Cir.2009) (citing *Anderson,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986)).

## E. THE EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE FTCA MAY BE RAISED UNDER FRCP 12(b)(1); UNDER THE PLRA, EXHAUSTION OF ADMINISTRATIVE REMEDIES CAN ONLY BE RAISED UNDER FRCP 12(b)(6) OR 56

Defendants move to dismiss the Amended Complaint, or, in the alternative, for summary judgment pursuant to FRCP 12 and 56. *See* Docket No. 39, p. 2. The exhaustion of administrative remedies or lack thereof under the FTCA may be raised under FRCP 12(b)(1); under the PLRA, it can only be raised under FRCP 12(b)(6) or 56.

### 1. THE FTCA & FRCP 12(b)(1)

Plaintiff has arguably raised a claim under the FTCA as discussed in Section ELF., *infra.*Exhaustion under the FTCA is jurisdictional. The FTCA provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). Thus, a Court lacks jurisdiction over a case brought under the FTCA if the plaintiff has failed to comply with the presentment requirement. *See Skyers v.*

*U.S.,* No. 12–CV–3432, 2013 WL 3340292, at *12 (S.D.N.Y. July 2, 2013) (dismissing FTCA claims based upon lack of subject matter jurisdiction due to failure to exhaust); *R.B. ex rel. Braver v. U.S.,* No. 11–CV–761 (JG), 2013 WL 1952307, at *4 (E.D.N.Y. May 10, 2013) (same); *Cuello v. U.S.,* No. 11–CV–2216 (KAM), 2013 WL 1338839, at *7 (E.D.N.Y. Mar.29, 2013) ("In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim.").

**\*10** FRCP 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See*Fed.R.Civ.P. 12(b)(1). A claim of failure to exhaust administrative remedies under the FTCA is thus properly raised under FRCP 12(b)(1).*See Thomas v. Ashcroft,* 470 F.3d 491, 494 n. 3 (2d Cir.2006) (stating that a district court should dismiss tort claims for noncompliance with FTCA exhaustion procedures for lack of subject matter jurisdiction); *Celestine v. Mount Vernon Neighborhood Health Center,* 403 F.3d 76, 82 (2d Cir.2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived.").

As noted above, Section EC, in deciding a FRCP 12(b)(1) motion, a court may look beyond the pleadings, as it will need to do here, to determine whether Plaintiff exhausted his administrative remedies.

### 2. THE PLRA & FRCP 56

Because Plaintiff filed this action while in prison and about prison conditions, the suit falls under the PLRA. Administrative exhaustion under the PLRA is not jurisdictional. "[T]he Second Circuit has held in no uncertain terms for nearly a decade that '[i]tis now well-settled in this circuit that exhaustion under the PLRA is not jurisdictional.'"*Shapiro v. Community First Servs., Inc.,* No. 11–CV–4061 (KAM), 2013 WL 1122628, at *5 (E.D.N.Y. Mar.18, 2013) (quoting *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004)); *see Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004) ("[A]dministrative exhaustion is not a jurisdictional predicate."); *McCoy v. Goord,* 255 F.Supp.2d 233, 249 (S.D.N.Y.2003) (noting that raising the affirmative defense of PLRA exhaustion in a FRCP 12(b)(1) motion "is not appropriate because exhaustion is not jurisdictional").

When a court must look beyond the face of the complaint in order to decide whether to dismiss claims, summary judgment under FRCP 56 is the appropriate vehicle through which to assess the defense. *See*Fed.R.Civ.P. 12(d), 56; *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir.1991) ("If a district court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material."); *Nabatkhorian v. County of Nassau,* No. 12–CV–1118 (JS),2013 WL 1233247, at *5 (E.D.N.Y. Mar.27, 2013) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). [5] Here, because compliance with the PLRA is not jurisdictional, and the Court must look at materials beyond the Amended Complaint to assess whether Plaintiff properly exhausted his administrative remedies, a FRCP 56 analysis is necessary. [6]

## III. DISCUSSION

### A. PLAINTIFF'S MOTION FOR JOINDER OF THE UNITED STATES OF AMERICA SHOULD BE GRANTED.

**\*11** It is clear from Plaintiff's pleading that he intended to include the federal government as a defendant, but failed to properly name it, instead identifying its employees and agency. In order to include all intended defendants in this action and in the absence of opposition from Defendants, *see Docket No. 52,* I respectfully recommend that Plaintiff's motion for joinder of the United States of America as a Defendant be granted. The benefit of permitting joinderrather than denying the motion as futileis that there will be a binding decision entered in favor of all Defendant parties who have an interest in this litigation so that they can avoid any future litigation on the issues raised herein.

### B. OVERVIEW OF *BIVENS* CLAIMS AND EXHAUSTION OF LEGAL REMEDIES UNDER THE PRISON LITIGATION REFORM ACT

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a); *see Gray v. Metropolitan Detention Center,* No. 09–CV–4520 (KAM), 2011 WL 2847430, at

*8 (E.D.N.Y. July 15, 2011) (quoting *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002)). The PLRA's exhaustion requirement is mandatory and applies even if the plaintiff seeks relief, such as money damages, not available in the administrative process. *See Gray,* 2011 WL 2847430, at *8 (citing *Porter,* 534 U.S. at 524, 122 S.Ct. at 988; *Booth v. Churner,* 532 U.S. 731,739– 41, 121 S.Ct. 1819, 1824–26, —— L.Ed.2d ——,—— – —— (2001)). The PLRA applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Espinal v. Goord,* 558 F.3d 119, 124 (2d Cir.2009). This exhaustion requirement applies to suits involving *Bivens* actions. "*Bivens* actions ... [against] BOP employees in their individual capacity, are subject to the PLRA."*Valentine v. Lindsay,* No. 10–CV–868 (JG), 2011 WL 3648261, at *5 (E.D.N.Y. Aug.17, 2011).

When suing under *Bivens,* federal prisoners "must first exhaust inmate grievance procedures before bringing an action in federal court."*Porter,* 534 U.S. at 524, 122 S.Ct. at 988. Exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."*Woodford v. Ngo,* 548 U.S. 81, 81, 126 S.Ct. 2378, 2380–81, 165 L.Ed.2d 368 (2006)."The fact that a plaintiff may have submitted all of the required BOP administrative forms is irrelevant to 'proper exhaustion' if he failed to 'compl[y] with [the BOP's] deadlines and other critical procedural rules.'"*Id.* (quoting *Macias v. Zenk,* 495 F.3d 37, 44 (2d Cir.2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion under *Woodford.*" )).

**\*12** As noted above, exhaustion under the PLRA is not jurisdictional; it is an affirmative defense. *See Ford v. Spears,* No. 10–CV–1314 (RJD), 2012 WL 4481739, at *7 (E.D.N.Y. Sept.27, 2012) (citing *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004)); *Malik v. City of N.Y.,* No. 11–CV–6062 (PAC), 2012 WL 3345317, at *5 (S.D.N.Y. Aug.15, 2012)." '[I]t is the Defendants' burden to establish non-exhaustion.'"*Malik,* 2012 WL 3345317, at *5 (quoting *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (collecting cases)).

## C. THE RECORD

Defendants argue that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. In this case, as noted above, Plaintiff's claims are that (1) he should have been given additional medical testing and pain medication beyond what the MDC provided him; (2) the MDC did not

maintain sufficient working distress buttons or bunk ladders in the SHU; (3) Lt. Grose and Lt. Pasley acted toward him in an unprofessional manner; and (4) he desires a copy of his medical records. These claims all relate to conditions of Plaintiff's confinement at MDC that, if true, may have affected his quality of life there. Accordingly, the PLRA must be applied to each claim.

As Defendants raise the defense that Plaintiff has not exhausted his administrative claims, we first look at the administrative record and BOP procedures. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion for Summary Judgment ("Dfs.Br."), *Docket No. 36,* at 19. Defendants submit a declaration by Kenneth Bork, a Staff Attorney with the Consolidated Legal Center of the United States Department of Justice, BOP ("Bork Decl.") ¶ 1, *Docket No. 36–2,* to support his position. Mr. Bork is currently assigned to the MDC in Brooklyn, New York. *See* Bork Decl. ¶ 2. As a staff attorney at the MDC, Mr. Bork has access to various records including documentary records, judgment and commitment files, and computerized records regarding federal prisoners maintained on the BOP's databases, which are maintained in the ordinary course of business at the MDC. *See id.* ¶ 3. Mr. Bork has reviewed the pertinent administrative records concerning Plaintiff. *See id.* ¶ 4.

Mr. Bork's declaration gives an overview of the BOP administrative review process at the MDC. Upon admission to a BOP facility, all inmates are given an Admission and Orientation ("A & O") booklet that advises them of the policies and procedures of both the BOP and of the individual institution. *See* Bork Decl. ¶ 21 n. 2. The A & O booklet describes in detail the administrative remedy process and advises inmates about it. *See id.*

The BOP has established a tiered inmate grievance program for prisoners in its custody in which federal inmates may seek formal review of complaints relating to any aspect of their confinement. *See* Bork Decl. ¶ 21. The BOP administrative review process requires an inmate in BOP custody with a concern to first report the issue informally to prison staff so the staff can attempt to resolvethe issue. *See*28 C.F.R § 542.13(a). If the inmate is dissatisfied with the staff's resolution, the inmate can then pursue the formal three-tiered administrative remedy process set forth in 28 C.F.R. §§ 542.10–542.16. At the first level of formal administrative review, an inmate may file a Request for Administrative Remedy (*i.e.,* a BP–9 or BP–229 form) with the prison

warden at his or her individual institution. *See* 28 C.F.R. § 542.14(a). This form must be submitted within 20 calendar days following the date on which the event forming the basis of the request occurred. *See* 28 C.F.R. § 542.14(a). An inmate who is not satisfied with the warden's response may proceed to the second level by filing a Regional Administrative Remedy Appeal, known as a BP–10, with the Regional Director. *See* 28 C.F.R. § 542.15(a). The BP–10 must be submitted "within 20 calendar days of the date the warden signed the response [to the BP–9]." *See id.* If the inmate does not receive relief at that second stage, the third and final level of administrative review is a Central Office Administrative Remedy Appeal brought by filing a BP–11 form with the General Counsel within 30 calendar days of the date the Regional Director signed the response to the BP–10. *See id.* All three levels of review are governed by strict time limits. *See* 28 C.F.R. § 542.18. A plaintiff is not considered to have exhausted his or her administrative remedies until the claim is considered by the BOP's Central Office. *See* 28 C.F.R. § 542.15(a).

### D. PLAINTIFF'S ADMINISTRATIVE REMEDIES

**\*13** Plaintiff was on notice of the requirement for filing administrative remedies while he was at MDC because he received the "A & O" handbook upon admission to the MDC. *See* Bork Decl., n. 2. Plaintiff also refers to his submissions of BOP forms throughout his exhibits, showing his awareness of the process. *See generally* Docket No. 36. We now review, in turn, Plaintiff's efforts to exhaust each claim.

### 1. ADMINISTRATIVE EXHAUSTION OF PLAINTIFF'S CLAIM FOR ADDITIONAL MEDICAL TESTING AND CARE

Plaintiff submitted an "Inmate Request to Staff" discussing his head and neck pain on March 3, 2012. *See* Declaration of Kelly Florio. *Docket No. 36* ("Florio Decl."). Exh. D. Plaintiff then sent a BP–10 to the BOP Regional Office that was received on April 11, 2012, also discussing his head and neck pain. *See* Florio Deck, Exh. E. On April 17, 2012, the Regional Office issued a rejection of this BP–10 because Plaintiff needed to first submit a BP–9 before filing an appeal at the regional level. *See* Florio Deck, Exh. F. Plaintiff then sent another BP–10 to the Regional Office, to request medical treatment, which was received by the Regional Office on April 18, 2012. *See* Florio Deck, Exh. G. On April 19, 2012, this BP–10 was rejected by the Regional Office because Plaintiff still had not filed a BP–9 for this claim. *See* Florio Decl., Exh. H. On May 8, 2012, Plaintiff submitted an

"Inmate Request for Informal Resolution" requesting further medical care. *See* Florio Decl., Exh. J. This form was received on May 23, 2012. *See id.* In response to his request, Plaintiff was advised by his counselor that he was taken to an outside hospital for evaluation following his fall from the bunk and that his skull X-rays were negative. *See id.* On June 7, 2012, Plaintiff submitted a BP–9 requesting further medical treatment. *See* Florio Deck, Exh. K. This BP–9 was received by the Administrative Remedy Coordinator at MDC on June 11, 2012, and was rejected on June 15, 2012. *See* Florio Deck, Exh. L. The rejection notice states that the BP–9 was rejected because Plaintiff did not submit it "through [his] counselor, or other authorized person," that Plaintiff "may resubmit [his] request in proper form within five days of the date of this rejection notice," and that the request for treatment "has been forwarded to the appropriate department for review." Id Plaintiff claims, in his Reply Memorandum of Law in Further Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.Br."), that he handed Exhibit K [a BP–9] "to the warden himself." Pl. Br. at 3, *Docket No. 45.* Plaintiff does not claim that he pursued his administrative remedy beyond allegedly handing the BP–9 to the warden. *See* Pl. Br. at 3.

Here, this Court cannot determine that Plaintiff failed to exhaust his administrative remedies with respect to his claim for further medical treatment. The June 15 th rejection contained confusing information in that it 1) stated that the BP–9 was rejected because Plaintiff "did not submit [his] request through [his] counselor or other authorized persons," yet 2) stated that "your rqst for treatment has been forwarded to the appropriate department for review." Florio Decl., Exh. L. It is reasonable that Plaintiff believed that his request would be processed and that he need not pursue any other administrative remedies at the time because of this second remark in the rejection notice.

**\*14** In a recent case from this District, *Ford v. Spears,* No. 10–CV–1314 (RJD), 2012 WL 4481739, at \*7 (E.D.N.Y. Sept.27, 2012), the plaintiff received a rejection letter from the BOP stating that a BP–9 form was rejected because the plaintiff had failed to attempt informal resolution. *Id.* at \*7. The rejection notice also stated: "because of the seriousness of [the plaintiff's] allegations[,] this complaint has been forwarded for review & investigation." *Id.* The court found that this response was "susceptible to reasonable misinterpretation and confusion." *Id.* (citing *Snider v. Melindez,* 199 F.3d 108, 114 n. 3 (2d Cir.1999) (vacating dismissal of Plaintiff's claims based upon failure to exhaust because "the form on which [plaintiff] submitted

his complaint present[ed] numerous possibilities for error" and "invit[ed] confusion")); *see Giano,* 380 F.3d at 678 (plaintiff satisfied exhaustion requirement where plaintiff's "failure to do so was justified by his reasonable," but mistaken interpretation of BOP process). In *Ford,* the court held that "plaintiff attempted to do that which he thought was required of him despite defendant-erected obstacles to proper exhaustion."Id at *8. The *Ford* Court therefore found that the plaintiff adequately exhausted his claims under the PLRA and that the case could be heard in federal court. *See id.*

In the instant case, language very similar to that contained in the rejection notice in *Ford* was used to reject Plaintiff's BP–9 requesting further medical attention. *See* Florio Decl., Exhs. K, L. As in *Ford,* the Court considers that the administrative response to Plaintiff's Complaint ("Your rqst for treatment has been forwarded to the appropriate department for review") was likely to confuse Plaintiff and that it may have led him to believe that further administrative appeal was unnecessary. Therefore, this Court declines to determine that Plaintiff failed to exhaust his administrative remedies with respect to his request for further medical treatment.

## 2. ADMINISTRATIVE EXHAUSTION OF PLAINTIFF'S CLAIM THAT THERE WERE NO LADDERS IN THE SHU

Plaintiff initiated his administrative remedies for his claim that there were no ladders in the SHU by filing a BP–10 mentioning the lack of ladders with the BOP Regional Office, which was received on April 11, 2012. *See* Florio Decl., Exh. E. On April 17, 2012, the Regional Office issued a rejection of this BP–10 because Plaintiff needed to first submit a BP–9 before filing an appeal at the regional level. *See* Florio Deck, Exh. F. Plaintiff then sent the Regional Office another BP–10, mentioning the lack of ladders in the SHU; it was received on April 18, 2012. *See* Florio Deck, Exh. G. This BP–10 was rejected by the Regional Office on April 19, 2012, because Plaintiff still had not filed a BP–9 for this request. *See* FlorioDeck, Exh. H. Plaintiff filed no further documentation with respect to this claim. The evidence offered by Defendants shows that Plaintiff did not follow the proper procedure in submitting and appealing this claim because he failed to submit a BP–9 to the appropriate authorities. *See* Section III.D.2., *supra.*

 **\*15** The Court applies the summary judgment standard to this claim for the reasons set forth in Section II.D. In his Amended Complaint and opposition to the motion to dismiss or, in the alternative, for summary judgment, Plaintiff

does not offer any information different from Defendants' records, or any explanations for his failure to file the proper paperwork. Plaintiff does not dispute the timing or order of filing of BOP forms required for administrative exhaustion of his claims. As 42 U.S.C. § 1997e(a) requires exhaustion of administrative remedies before a prison inmate can bring a federal claim, but Plaintiff failed to exhaust this claim, he is barred from bringing it in federal court. *See Porter,* 534 U.S. at 526, 122 S.Ct. at 988; *Spears,* 2012 WL 4481739, at *6* ("The PLRA bars prisoners from bringing a federal claim 'with respect to prison conditions ... until such administrative remedies as are available are exhausted.'" (quoting 42 U.S.C. § 1997e(a)). As there is no genuine dispute of material fact as to exhaustion of Plaintiff's complaint that ladders were not provided in the SHU, I respectfully recommend that the District Court find that Plaintiff did not exhaust his administrative remedies as to this claim, and that summary judgment in favor of Defendants be granted as to this claim.

## 3. ADMINISTRATIVE EXHAUSTION OF PLAINTIFF'S CLAIM THAT THERE WERE NO WORKING DISTRESS SIGNALS IN THE SHU

Plaintiff does not mention the lack of functioning distress signals in any of the administrative forms that he submitted. *See generally* Am. Compl.; Florio Decl. Therefore, I respectfully recommend that the District Court find that Plaintiff did not exhaust his administrative remedies as to this claim, and that summary judgment in favor of Defendants be granted as to this claim.

## 4. ADMINISTRATIVE EXHAUSTION OF PLAINTIFF'S CLAIMS OF UNPROFESSIONAL CONDUCT BY LLEUTENANTS GROSE AND PASLEY

Plaintiff's Amended Complaint can be read to assert claims of unprofessional conduct by Lieutenants Grose and Pasley. Plaintiff claims that when he informed Lieutenant Pasley that he needed a ladder to access his bunk, Lt. Pasley told him to write to the warden because there was nothing that Lt. Pasley could do about it. *See* Am. Compl. p. 2. Plaintiff claims that when he complained to Lt. Grose about his medical problems, Lt. Grose stated that Plaintiff should have never come to prison and then he would not be in this position. *See* Am. Compl. p. 3. Plaintiff did not file any administrative remedy forms with respect to these claims. *See generally Docket Nos. 9, 36.*Plaintiff did not follow the proper procedure to exhaust these claims, as discussed in Section III.E.2. Plaintiff thus

failed to exhaust his administrative remedies with respect to this claim.

As above, the Court applies the summary judgment standard to this claim for the reasons set forth in Section n.D. Plaintiff does not offer any information different from Defendants' records or claim that he followed the procedure outlined by the BOP with respect to this claim. Because there is no genuine dispute of material fact as to exhaustion of Plaintiff's claim that Lieutenants Grose and Pasley acted unprofessionally toward him, I respectfully recommend that the District Court find that Plaintiff did not exhaust his administrative remedies as to this claim, and that summary judgment in favor of Defendants be granted as to this claim.

### 5. ADMINISTRATIVE EXHAUSTION OF PLAINTIFF'S REQUEST FOR MEDICAL RECORDS

**\*16** Plaintiff claims that he requested his medical records from Mr. Ittayem, the medical supervisor at the MDC, on July 6, 2012, and he was told that Mr. Ittayem believed they had already been sent to Plaintiff. *See* Am. Compl. p. 1. Plaintiff requests that the Court issue an order requesting his medical records. *See id.* pp. 2–3.As to Plaintiff's claim for medical records, Plaintiff filed an "Inmate Request to Staff' on February 13, 2012, requesting all of his medical documents from February 10, 2012 until February 13, 2012. *See* Florio Decl., Exh. B. On July 5, 2012, Plaintiff completed an "Inmate Request to Staff' stating that the Court requested his medical records so that he wished to receive a copy of them. *See* Florio Decl., Exh. M. Plaintiff received a copy of his medical records on or about July 11, 2012. *See Docket No. 11.*Plaintiff did not file any formal administrative remedy requests with respect to this claim. *See generally Docket Nos. 9, 36.*Plaintiff does not offer any evidence of exhaustion or explain his failure to exhaust his administrative remedies. Thus, the administrative remedies with respect to this claim were not exhausted; Plaintiff is therefore barred from bringing this claim to federal court. *See Porter,* 534 U.S. at 524, 122 S.Ct. at 988; *Spears,* 2012 WL 4481739, at \*6.

In any event, this claim should be considered moot because Plaintiff has received the medical records.

As above, the Court applies the summary judgment standard to this claim. Plaintiff does not offer any information different from Defendants' records or claim that he followed the procedure outlined by the BOP with respect to this claim. Because there is no genuine dispute of material fact as to exhaustion of Plaintiff's requests for his medical records,

I respectfully recommend that the District Court find that Plaintiff did not exhaust his administrative remedies as to this claim, and that summary judgment in favor of Defendants be granted as to this claim.

\* \* \*

In sum, Defendants have shown that there are no material facts in dispute that Plaintiff did not exhaust his administrative remedies as to four of his five claims. I respectfully recommend that the Court find that only Plaintiff's claim of inadequate medical treatment is arguably exhausted such that Plaintiff may pursue it in federal court.

### E. PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR PERSONAL CAPACITIES

Although Plaintiff only arguably exhausted one of his five claims, I look to the merits of each claim.

### 1. PLAINTIFF'S CLAIMS OF INADEQUATE MEDICAL CARE AGAINST INDIVIDUAL DEFENDANTS

I now look to the merits of Plaintiff's inadequate medical care claim. "In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),* the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'"*Arar v. Ashcroft,* 585 F.3d 559, 570 (2d Cir.2009) (quoting *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 66, 122 S.Ct. 515, 519, 151 L.Ed.2d 456 (2001)). The plaintiff in *Bivens* had been subjected to an unlawful, warrantless search which resulted in his arrest. *See Bivens,* 403 U.S. at 389–90, 91 S.Ct. at 2001–02. The Supreme Court allowed him to state a cause of action for money damages directly under the Fourth Amendment, thereby giving rise to a judicially created remedy stemming directly from the Constitution itself.*Id.* at 397, 91 S.Ct. at 2005. "The purpose of the *Bivens* remedy 'is to deter individual federal officers from committing constitutional violations.'"*Arar,* 585 F.3d at 571 (quoting *Malesko,* 534 U.S. 61, 70, 122 S.Ct. 515, 521, 151 L.Ed.2d 456)."So a *Bivens* action is brought against individuals, and any damages are payable by the offending officers."*Id* (citing *Carlson v. Green,* 446 U.S. 14, 21, 100 S.Ct. 1468, 1473, 64 L.Ed.2d 15 (1980))."Notwithstanding the potential breadth of claims that would serve that objective,

the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.' "*Id.* (citing *Malesko,* 534 U.S. at 69, 122 S.Ct. at 520; *Schweiker v. Chilicky,* 487 U.S. 412, 421, 108 S.Ct. 2460, 2466, 101 L.Ed.2d 370 (1988)); *see Wilkie v. Robbins,* 551 U.S. 537, 550, 127 S.Ct. 2588, 2597, 168 L.Ed.2d 389(2007) ("[I]n most instances we have found a *Bivens* remedy unjustified."); *Dotson v. Griesa,* 398 F.3d 156, 166 (2d Cir.2005) ("Because a *Bivens* action is a judicially created remedy ... courts proceed cautiously in extending such implied relief").

**\*17** The constitutional rights of a convicted and incarcerated inmate, such as Plaintiff, flow from the Eighth Amendment and its prohibition against cruel and unusual punishment. *See Helling v. McKinney,* 509 U.S. 25,31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993); *Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013); *Wassman v. Cnty. of Ulster, N.Y.,* No. 12–CV–4263, 2013 WL 3214649, at \*1 (2d Cir. June 27, 2013); *Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.1991). Plaintiff alleges an Eighth Amendment claim brought under *Bivens* against all of the individual Defendants for failure to provide adequate medical care. *See generally* Am. Compl. and additional submissions, *Docket Nos. 9–11.*

**a. STANDARDS FOR ESTABLISHING A DELIBERATE INDIFFERENCE CLAIM**

In order to establish "a claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"*Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251, S.Ct. 285, 291 (1976)); *see Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011) ("An Eighth Amendment claim arising out of inadequate medical care requires a demonstration of 'deliberate indifference to [a prisoner's] serious medical needs.' ")."Claims that prison officials have disregarded an inmate's medical needs must satisfy both objective and subjective elements."*Gray,* 2011 WL 2847430, at \*11 (citing *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003)); *see Hill,* 657 F.3d at 122 (same).

Under the objective prong of this test, the plaintiff must show that his "medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"*Goris v. Breslin,* No. 10–0491–pr, 2010 WL 4840482, at \*2 (2d Cir. Nov.30, 2010) (quoting *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005)); *see Hill,* 657 F.3d at 122 (same)." 'Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to

medical needs amounts to an Eighth Amendment violation only if those needs are serious.'"*Goris,* 2010 WL 4840482, at \*2 (quoting *Hudson v. McMillan,* 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)); *see Smith,* 316 F.3d at 184 (same)."Moreover, '[i]n cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower.'"*Goris,* 2010 WL 4840482, at \*2 (quoting *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir.2006)).

"The subjective prong requires the charged official to have acted with a 'sufficiently culpable state of mind.' "*Gray,* 2011 WL 2847430, at \*11 (quoting *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994))."Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."*Farmer v. Brennan,* 511 U.S. 825, 826, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994); *see Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991)."The required state of mind, equivalent to criminal recklessness, is that the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"*Gray,* 2011 WL 2847430, at \*11 (quoting *Hemmings v. Gorczyzk,* 134 F.3d 104, 108 (2d Cir.1998)); *see Goris,* 2010 WL 4840482, at \*1. "Thus, to state a *Bivens* claim for inadequate medical care, plaintiff must allege that the individual defendants knew of and disregarded an excessive risk to his health or safety."*Gray,* 2011 WL 2847430, at \*11;*see Hathaway,* 37 F.3d at 63.

**\*18** "Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates."*Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992) (citation omitted), *aff'd,*970 F.2d 896 (2d Cir.1992); *see Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Brown v. City of N.Y.,* No. 98–CV–5354 (ILG), 2001 U.S. Dist. LEXIS 4629, at \*25,2001 WL 477279 (E.D.N.Y. Feb 15, 2001) (granting summary judgment in favor of defendants on the plaintiff's claim of deliberate indifference to medical needs because the allegation that "something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim").

It is well-settled that mere medical malpractice or differences of opinion between the prisoner and the defendants concerning the proper course of treatment do not suffice to establish an actionable claim of deliberate indifference. *See Allah v. Michael,* No. 11–1475–pr, 2012 WL 6633977, at *1 (2d Cir. Dec.21, 2012) (summary order) (affirming grant of summary judgment in favor of defendants on claim of deliberate indifference to medical needs because prison officials did not demonstrate deliberate indifference to inmate's serious medical needs, in violation of Eighth Amendment, as a result of their refusal to remove pins from his feet, where three different physicians concluded that pain complained of was not in area of pins and that there was no need to remove pins); *Bilal v. White.*No. 10–4594–pr, 2012 WL 3734376, at *1 (2d Cir. Aug.30, 2012) (summary order) (affirming grant of summary judgment in favor of defendants on claim of deliberate indifference to medical needs because a delay or interruption lasting only a few hours, in the provision of otherwise adequate medical treatment for an inmate, an asserted epileptic with compressed vertebrae and arthritis in his back, did not rise to level of an Eighth Amendment violation, despite the inmate's claim that he suffered "extreme" pain); *Collazo v. Pagano,* 656 F.3d 131, 133 (2d Cir.2011) (affirming grant of summary judgment in favor of defendants where inmate claimed that depriving him of his medically prescribed diet constituted deliberate indifference to his medical needs); *Green v. Senkowski,* No. 03–0250, 2004 WL 129786, at *1–*2 (2d Cir.2004); *Demata v. N.Y.S. Correctional Dep't of Health Servs.,* No. 99–0066, 1999 U.S.App. LEXIS 22955, at *3, 1999 WL 753142 (2d Cir. Sept. 17, 1999) (affirming summary judgment in favor of defendants on claim of deliberate indifference to medical needs because the fact that the plaintiff "feels something more should have been done to treat his injuries is not a sufficient basis for a deliberate indifference claim"); *Bryant,* 923 F.2d at 984 (affirming summary judgment in favor of defendants on claim of deliberate indifference to medical needs because simple negligence is not enough to support a valid claim of inadequate medical care); *Abdul–Matiyn v. N.Y.S. Dept. of Corr. Servs.,* 871 F.Supp. 1542, 1548 (N.D.N.Y.1994) (granting summary judgment in favor of defendants on claim of deliberate indifference to medical needs because decision not to order tinted glasses as requested does not constitute a constitutional violation, even assuming decision was wrong), *aff'd,*66 F.3d 309 (2d Cir.1995).

**\*19** As a federal inmate, Plaintiff does not have a constitutional "right to the treatment of his choice."*Ross,* 784 F.Supp. at 44;*see Chance,* 143 F.3d at 703. A difference of opinion between a plaintiff and his doctors regarding treatment options, including, but not limited to, whether or not an MRI is appropriate, does not rise to the level of a constitutional violation. *See Victor v. Millicevic,* No. 08–1772–pr, 2010 WL 227646, at *1 (2d Cir. Jan.19, 2010) (summary order) (affirming summary judgment in favor of defendants on claim of deliberate indifference to medical needs and finding as a matter of law that physician's choice not to order MRI where other treatment responsive to plaintiff's condition was provided did not violate Eighth Amendment deliberate indifference standard).

In a case such as this one in which the prisoner has actually received medical treatment, deliberate indifference will not be found unless "the medical attention rendered [was] so woefully inadequate as to amount to no treatment at all."*Westlake,* 537 F.2d at 860 n. 5;*see Johnson v. Wright,* 234 F.Supp.2d 352, 361 (S.D.N.Y.2002) ("Generally, where the dispute concerns not the absence of help, but the choice of a certain course of treatment ... [a court] will not second guess the doctors.' " (citations omitted)). Accordingly, courts have routinely dismissed claims of deliberate indifference and improper medical care where, as here, the evidence shows that a prisoner received treatment for his complaints. *See Perez,* 302 F.Supp.2d at 21 (dismissing plaintiff's constitutional claim for inadequate medical care where plaintiff was treated by prison medical staff approximately 30 times over an 18–month period); *Connors v. Heywright,* No. 02–CV–9988 (DC), 2003 U.S. Dist. LEXIS 7978, at *10–*12, 2003 WL 21087886 (S.D.N.Y. May 12, 2003) (dismissing *sua sponte,* under FRCP 12(b)(6), plaintiff's claim of deliberate indifference where prison officials promptly responded to plaintiff's medical complaints, which included epilepsy and back, shoulder and scalp injuries); *Rowland v. Hildreth,* No. 92–CV–6140 (LMM), 1993 U.S. Dist. LEXIS 10233, at *30–*31, 1993 WL 287646 (S.D.N.Y. July 27, 1993) (granting summary judgment to the defendants on the plaintiff's claims of deliberate indifference where it appeared from evidence that plaintiff received treatment every time he went to prison clinic); *see also Anderson v. Capps,* No. 3:02–CV–0455–L, 2004 U.S. Dist. LEXIS 12144, at *14–*15, 2004 WL 1418795 (N.D. Tex. June 22, 2004) (granting summary judgment in favor of the defendants on deliberate indifference claims asserted by inmate who was examined by doctor and staff 15 times and examined by an orthopedic specialist twice in a 19–month period, where doctor ensured that inmate received treatment for his leg injury, despite need for amputation).

### b. PLAINTIFF'S CLAIM OF DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS FAILS

Plaintiff alleges deliberate indifference to his medical needs against all of the individual Defendants. He asserts throughout the Amended Complaint that Defendants ignored his requests for medical treatment despite his claims of seizures, blackouts, pain and vision loss; he also alleges that he received medical care. *See* Am. Compl. pp. 1–4. Plaintiff's allegations do not show any indifference to his medical needs. Even if Plaintiff's medical complaints were construed as "serious" for purposes of the objective element of a deliberate indifference claim, Plaintiff does not allege facts or offer evidence to show that the individual Defendants knew of and disregarded any risk to Plaintiff's health or safety. When Plaintiff's medical records, which are incorporated by reference into his Amended Complaint, are examined, Plaintiff does not allege objective indifference to his medical needs.

**\*20** First, Plaintiff himself states in his Amended Complaint that Officers Caballero, Hernandez, Jiminez and King, who worked in the SHU area during Plaintiff's incarceration there, did not "know the severety [sic] of [his] issue."*See Docket No. 9,* p. 2. This statement alone undermines any claim that those defendants were aware that Plaintiff had serious medical needs and disregarded them.

Second, Plaintiff's Amended Complaint offers only bald assertions that these Defendants, along with Warden Terrell, Dr. Newland, Lt. Pasley, Lt. Grose and Mr. Ittayem, ignored his requests for medical treatment. *See generally Docket No. 9,* pp. 1–4. In fact, Plaintiff's own submissions, including portions of his medical record, together with the approximately seventy pages of medical records attached as Exhibit 1 to Plaintiff's "Supplemental Complaint," *Docket No. 11,* establish that he received substantial medical care during his 2012 incarceration at MDC between February 11, 2012, the date of his alleged fall, and July 11, 2012.

I review the treatment records briefly to show how implausible Plaintiff's claim is. For example, on February 12, 2012, Plaintiff was treated by Nurse Eva Piotrowska for a bump on his head and was given acetaminophen. *See Docket No. 11–1,* p. 7. On that same day, a "CT HEAD WITHOUT CONTRAST" was performed. *See id.,* p. 9. On February 16, 2012, Plaintiff was treated for seizures, given a blood test, and was prescribed Phenytoin. *See id.,* p. 10.On that same date, Plaintiff was also treated for his head contusion and for spasmodic torticollis. *See id.,* pp. 12–13.He was issued a lower bunk pass. *See id.,* p. 13.On February 23, 2012, Plaintiff was again treated for a seizure. *See id.,* p. 14.On February 24, 2012, Plaintiff was treated for dizziness and was prescribed Meclizine. *See id.,* pp. 18–20.On February 27, 2012, Plaintiff was treated for allegedly seeing visions, as well as for his head injury. *See id.,* p. 22–24.He was prescribed Phenytoin Sodium. *See id.,* p. 25.On March 6, 2012, Plaintiff was treated for vomiting. *See id.,* p. 27.On March 7, 2012, Plaintiff was treated for vertigo and a seizure. *See id.,* p. 29.On March 28, 2012, Plaintiff was treated for a headache and was given ibuprofen. *See id.,* pp. 33–35.On April 23, 2012, Plaintiff was treated for a stiff neck and was again given ibuprofen. *See id.,* p. 37.On May 3, 2012, Plaintiff was again treated for a stiff neck. *See id.,* p. 41.On May 11, 2012, Plaintiff was treated for blindness in his right eye. *See id.,* p. 49.On May 25, 2012, Plaintiff was treated for a seizure. *See id.,* p. 59.On May 26, 2012, Plaintiff was treated for pain throughout his body. *See id.,* p. 61.On June 19, 2012, Plaintiff was treated for muscle and joint aches and was prescribed ibuprofen. *See id.,* pp. 67–68.Plaintiff's MDC medical records confirm that he was seen by MDC medical staff for his alleged physical complaints approximately twenty times between February 11, 2012, the date of his alleged fall, and June 19, 2012. Plaintiff also received medication for his pain and seizures during that time, an eye exam for his vision complaints, a CAT scan of his head and neck, an EKG, x-rays of his cervical spine and head, and various blood tests. *See Docket No. 11,* Exh. 1.

**\*21** As to Plaintiff's most serious allegation, a lack of appropriate care for his head injury, I look even more closely at the record. Plaintiff admits that he was taken to an outside hospital after his February 11, 2012 fall at the MDC, *see* Compl., p. 15, *Docket No. 2; see also* Florio Deck, Exh. G, and that he received a CAT scan at that time, which yielded negative results, *see* Compl., p. 5. He further states that he received pain medication upon his return to MDC that day. *See id.*Plaintiff admits that he received pain medication subsequent to the date of his accident as well. *See id.*He also alleges that he was examined on February 12, 2012, and was given additional pain medication at that time. *Id.* He stated that Dr. Newland treated him for seizures on February 16, 2012. *Id.* Plaintiff acknowledges in his Amended Complaint that he received a "test" for his spine and "nasal" on May 30, 2012, while at MDC. *See Docket No. 9, p.* 2.

Applying the standard for summary judgment, there is no genuine issue of material fact as to the adequacy of the medical treatment given to Plaintiff. Plaintiff largely agrees with Defendants' description of the medical care received as

shown by a comparison of the Parties' respective Local Rule 56.1 Statements. Plaintiff agrees with Defendants' statement that, on the day of his fall from the bunk, medical staff at MDC examined Plaintiff and referred him to an outside hospital for treatment. *See* Defendants' Local Rule 56.1 Statement ("Dfs.St.") ¶ 21, *Docket No. 37;* Plaintiff's Local Rule 56.1 Statement ("Pl.St.") ¶ 21, *Docket No. 46.*Plaintiff does not dispute that, on February 12, 2012, New York Downtown Hospital performed CAT scans of his head and cervical spine, the results of which were negative for intracranial hemorrhage, traumatic brain injury and acute osseous cervical spine injury. *See* Dfs. St. ¶ 22; Pl. St. ¶ 22. Plaintiff also agrees that, on February 12, 2012, he returned to MDC where he was examined by MDC staff and was prescribed over-the-counter pain medication. *See* Dfs. St. ¶ 23; Pl. St. ¶ 23. Plaintiff agrees that he suffered from a seizure episode in his cell on February 16, 2012, and also complained of continued head and neck pain from his fall from the bunk. *See* Dfs. St. ¶ 24; Pl. St. ¶ 24. Plaintiff does not dispute that MDC staff examined him on February 16, 2012, and diagnosed him with a seizure disorder or other convulsions and spasmodic torticollis, and that he was prescribed Phenytoin Sodium ER, an anti-seizure medication, as well as the pain relievers Naproxen and Keterolac. *See* Dfs. St. ¶ 25; Pl. St. ¶ 25. Plaintiff does not dispute that he was issued a lowerbunk pass on February 16, 2012. *See* Dfs. St. ¶ 26; Pl. St. ¶ 26.

Plaintiff does not dispute that, on February 23, 2012, he fell and hit his head in his cell, losing consciousness and some vision in his right eye. *See* Dfs. St. ¶ 27; Pl. St. ¶ 27. Plaintiff agrees that he was examined by Dr. Newland on that same day and was diagnosed with a head injury and a visual acuity change. *See* Dfs. St. ¶ 28; Pl. St. ¶ 28. Plaintiff agrees that he was advised to follow-up within 12–24 hours and to return to MDC health services immediately if his condition worsened. *See* Dfs. St. ¶ 29; Pl. St. ¶ 29. Plaintiff agrees that medical staff at MDC saw him again on February 24, 2012, and, at that time, diagnosed him with vertigo and headache. *See* Dfs. St. ¶ 30; Pl. St. ¶ 30. Plaintiff agrees that he received prescriptions for Meclizine HCl to treat his vertigo and acetaminophen for his headache. *See* Dfs. St. ¶ 31; Pl. St. ¶ 31. Plaintiff does not dispute that MDC medical staff reassessed his neurological examination, found that his condition was intact without change, and encouraged him to limit strenuous activity and to take his medication as prescribed. *See* Dfs. St. ¶ 32; Pl. St. ¶ 32.

**\*22** Plaintiff does not dispute that MDC medical staff noted that Plaintiff's blindness had been documented on January 9,

2012, and that the condition was unchanged from that date. *See* Dfs. St. ¶ 34; Pl. St. ¶ 34. Plaintiff does not dispute that, on February 27, 2012, he fainted and fell, again hurting his head. *See* Dfs. St. ¶ 36; Pl. St. ¶ 36. Plaintiff does not dispute that the MDC staff then examined him and diagnosed him with "sprain and strain, other," increased Plaintiff's daily dose of anti-seizure medication, Phenytoin Sodium ER, and ordered an EKG. *See* Dfs. St. ¶ 37; Pl. St. ¶ 37. Plaintiff does not dispute that the EKG results were normal. *See* Dfs. St. ¶ 38; Pl. St. ¶ 38. Plaintiff does not dispute that, on the morning of March 7, 2012, he experienced another seizure and returned to MDC health services for examination. *See* Dfs. St. ¶ 39; Pl. St. ¶ 39. Plaintiff does not dispute that MDC medical staff diagnosed him with "seizure disorder, other convulsions," prescribed him acetaminophen, and ordered a complete metabolic profile, a complete blood count, and a blood test. *See* Dfs. St. ¶ 40; Pl. St. ¶ 40. Plaintiff does not dispute that, later that evening, an MDC nurse saw Plaintiff after he complained of vomiting his medication over an hour after taking it. *See* Dfs. St. ¶ 41; Pl. St. ¶ 41. Plaintiff agrees that, on March 28, 2012, he reported to MDC health services that he experienced chronic headaches with mild dizziness. *See* Dfs. St. ¶ 46; Pl. St. ¶ 46. Plaintiff does not dispute that MDC health services staff diagnosed him with headache and prescribed him ibuprofen. *See* Dfs. St. ¶ 47; Pl. St. ¶ 47. Plaintiff does not dispute that, on April 23, 2012, he reported to health services again with complaints of neck pain that he reported stemmed from the February 2012 fall. *See* Dfs. St. ¶ 48; Pl. St. ¶ 48. Plaintiff does not dispute that MDC staff diagnosed him with "stiffness of joint, not otherwise classified," prescribed him ibuprofen, and scheduled an optometry examination for him. *See* Dfs. St. ¶ 50; Pl. St. ¶ 50. Plaintiff does not dispute that, on May 3, 2012, he reported to MDC health services complaining of chronic neck pain, again allegedly stemming from his February, 2012 fall. *See* Dfs. St. ¶ 51; Pl. St. ¶ 51. Plaintiff agrees that he was then diagnosed with "nerve pain, neuralgia, neuritis, radiculitis," and received a prescription for Gabapentin. *See* Dfs. St. ¶ 52; Pl. St. ¶ 52. Plaintiff agrees that an MDC staff physician also ordered an x-ray of Plaintiff's cervical spine. *See* Dfs. St. ¶ 53; Pl. St. ¶ 53.

Plaintiff does not dispute that, on May 11, 2012, he received a complete physical exam by MDC physician Dr. Mchael Borecky as part of a chronic care encounter. *See* Dfs. St. ¶ 55; Pl. St. ¶ 55. Plaintiff agrees that he could previously see shadows with his right eye, but was now completely blind in that eye, and that he suffered headaches and blackouts subsequent to the fall from his bunk. *See* Dfs. St. ¶ 56; Pl. St. ¶

56. Plaintiff agrees that Dr. Borecky diagnosed him with: (1) chronic blindness in his right eye with no known reason for onset; (2) nerve pain, neuralgia, neuritis (temporary/acute); (3) headache (temporary/acute); (4) seizure disorder, other convulsions (temporary/acute) with progress listed as "at treatment goal"; and (5) neck pain, cervicalgia (temporary/ acute).*See* Dfs. St. ¶ 57; Pl. St. ¶ 57. Plaintiff does not dispute that he received a new prescription for Gabapentin to treat his "nerve pain, neuralgia neuritis, radiculitis," and that Dr. Borecky renewed plaintiff's Phenytoin prescription to treat his "seizure disorder, other convulsions." *See* Dfs. St. ¶ 58; Pl. St. ¶ 58. Plaintiff agrees that, on June 7, 2012, MDC physician Dr. Beaudoin, examined his eyes and diagnosed him with congenital optic nerve atrophy. *See* Dfs. St. ¶ 79; Pl. St. ¶ 79. Plaintiff agrees that on June 19, 2012, MDC medical staff examined him for complaints of neck and back pain allegedly related to his February 2012 fall. *See* Dfs. St. ¶ 81; Pl. St. ¶ 81. Plaintiff does not dispute that the examination revealed some spasm in the neck area and restricted range of motion upon neck flexion and extension. *See* Dfs. St. ¶ 82; Pl. St. ¶ 82. Plaintiff agrees that he was advised to continue taking a current Neurontin prescription for pain and was also prescribed ibuprofen for pain. *See* Dfs. St. ¶ 83; Pl. St. ¶ 83. Plaintiff agrees that on July 11, 2012, MDC medical staff received a request from plaintiff for a copy of his medical file. *See* Dfs. St. ¶ 84; Pl. St. ¶ 84.

**\*23** In addition to his extensive medical records from MDC during the relevant period, Plaintiff concedes in his own submissions, as discussed above, that he received extensive medical care from MDC and outside facilities. Plaintiff's real complaint is that he did not receive the medical care of his choice. For example, he alleges: "I have asked medical for an MRI and was refused the test because Doctor Newland stated on 3–23–12 that it cost to [sic] much and my concern is to [sic] minute to worry about."Am. Compl., p. 1. As noted above, Plaintiff had received a CAT scan that was negative. *See* Section III.E.1.b., *supra.*

Far from establishing deliberate indifference on the part of the individual Defendants, the record in this case establishes that Plaintiff received significant medical treatment on numerous occasions. The Amended Complaint does not suggest, and Plaintiff offers no evidence to show, that his condition worsened as a result of the medical treatment he did or did not receive during that time. These numerous medical treatment visits during his MDC incarceration contradict Plaintiff's conclusory allegations that any of the individual Defendants deliberately ignored his requests for medical

treatment. *See Allah–Kasiem v. Sidorowicz,* No. 09–CV–9665 (DLC), 2012 WL 2912930, at \*20 (S.D.N.Y. July 17, 2012) (granting defendants' motion for summary judgment on the plaintiff's claims of inadequate medical care based upon multiplicity of medical visits in response to the plaintiff's complaints); *Solar v. Lennox,* No. 10–CV–341 (LEK), 2012 WL 3929936, at \*19 (N.D.N.Y. July 16, 2012) (granting summary judgment to defendants on prisoner's Eighth Amendment claims of inadequate medical care based upon voluminous records of medical care provided: "[T]he record is replete with evidence that [the prison doctor] responded, evaluated, and treated [plaintiff], contradicting any claims of deliberate indifference."); *De Jesus v. Albright,* No. 08–CV–5804 (DLC), 2011 WL 814838, at \*9 (S.D.N.Y. Mar.9, 2011) (granting summary judgment in favor of defendants on incarcerated plaintiff's claim of insufficient medical care based upon extensive record of medical visits, drugs prescribed and treatment). Although Plaintiff claims that the medical treatment provided to him was inadequate, the record shows prompt, medically specific treatment with follow-up care, with specialists, and with outside treatment. Defendant has not shown any inadequacy of care in light of the extensive treatment he received.

Under the standard for summary judgment, once the moving party meets its initial burden of demonstrating that there is no genuine issue of material fact requiring trial, the onus shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."*Anderson,* 477 U.S. at 256. The party opposing summary judgment must then set forth evidence demonstrating a genuine issue for trial, and he may not rely only on allegations in its pleadings. *See Salahuddin v. Goord,* 467 F.3d 263, 273 (2d Cir.2006). Here, Plaintiff has not set forth any specific facts in response to Defendants' demonstration of the adequacy of care he received. Additionally, as pointed out above, Plaintiff has not offered any evidence of a subjective indifference to his medical needs by any Defendant. I therefore respectfully recommend that summary judgment be granted in favor of Defendants on this claim.

## 2. PLAINTIFF'S CLAIMS AGAINST LIEUTENANT GROSE AND LIEUTENANT PASLEY

**\*24** Plaintiff alleges that Lieutenants Pasley and Grose violated his Eighth Amendment rights through their unprofessional conduct. Plaintiff claims that Lt. Pasley committed a constitutional tort when he informed Plaintiff that he should write the warden regarding complaints about the availability of ladders and functioning distress buttons in

the SHU. *See Docket No. 9*, p. 2. Plaintiff claims that Lt. Grose acted in an unprofessional manner by stating that Plaintiff would not be in a position to complain about his medical treatment at MDC if he had avoided going to prison in the first place. *See id.*, p. 3.

With respect to Lt. Pasley's alleged comments, the proper procedure for inmates to file complaints about prison conditions is through the BOP administrative remedy process. *See* Section III.B. above. The first step in that process after informal resolution is the BP–9 form directed to the MDC warden. *See id.* Lt. Pasley simply directed Plaintiff to follow MDC procedure. Similarly, Plaintiff does not allege that Lt. Grose violated any MDC procedures in his interactions with Plaintiff. *See Docket No. 9.*

In any event, these comments do not constitute deliberate indifference to medical needs in violation of the Eighth Amendment or any other constitutional violation. *See Gumbs v. Dynan,* No. 11–CV–857 (RRM), 2012 U.S. Dist. LEXIS 120664, at *47, 2012 WL 3705009 (E.D.N.Y. Aug. 26, 2012) (holding that a MDC employee's response to an inmate's request for help in scheduling a medical appointment of "pretrial detainees are of no great concern here at MDC–Brooklyn. You'll have to just keep filing requests" did not constitute deliberate indifference to the plaintiff's medical needs because "while less than courteous in tone," the directive to keep filing requests complied with MDC procedures). Mere unpleasant or offensive comments do not constitute a constitutional violation. *See Hamilton v. Fischer,* No. 6:12–CV–6449 (MAT), 2013 WL 3784153, at *6 (W.D.N.Y. July 18, 2013) ("allegations that [plaintiff] was threatened and verbally berated [by prison guards] do not state an independent constitutional claim, insofar as he has failed to allege any concomitant injury"); *Ross v. Westchester County Jail,* No. 10–CV–3937 (DLC), 2012 WL 86467, at *7 (S.D.N.Y. Jan.11, 2012) ("[V]erbal threats, harassing comments and hostile behavior do not constitute adverse actions ..." (citing *Morales v. Mackalm,* 278 F.3d 126, 131–32 (2d Cir.2002) (calling prisoner a "stoolie" in the presence of fellow inmates)); *Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001) (calling a prisoner a "rat" or "informant"); *see also Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) ("sarcastic comments do not, without more, constitute an adverse action"); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir.2000) (rudeness and namecalling).

Lt. Pasley's comments alone, like those of the defendant in *Gumbs,* do not, as a matter of law, violate Plaintiff's Eighth Amendment rights. Even accepting Plaintiff's allegations about their comments as true, Defendants Pasley and Grose would not be liable to Plaintiff under any legal theory. The Court thus finds that Plaintiff fails to raise a viable legal claim or disputed issues of material fact as to any claim. To the extent the Court considers Plaintiff's unexhausted claim on its merits, I respectfully recommend that summary judgment be granted in favor of these Defendants.

### 3. PLAINTIFF'S CONSTITUTIONAL CLAIMS CONCERNING THE LACK OF LADDERS AND OF FUNCTIONING DISTRESS SIGNALS IN THE SHU

**\*25** Broadly construed, Plaintiff's Amended Complaint attempts to allege violations of his Eighth Amendment right because some of the cells in the SHU lack ladders and functioning distress buttons. *See* Am. Compl. p. 1 ("I'm also filing for cruel and unusual punishment for the fact there is [sic] no ladders in the East Special Housing Unit.... Also the distress buttons in some of the cells (East 208 cell) does not work.... So if an emergency [sic] in progress noone [sic] can help if you do not have a cell mate to call for help.").

First, it is noted that, as discussed in Sections III.D.2 and III.D.3, *supra,* Plaintiff failed to administratively exhaust, through the BOP appeals process, his remedies both for the lack of ladders and for functioning distress signals. As for the lack of ladders in the SHU, the Second Circuit Court of Appeals recently decided that a claim of a lack of ladders for inmates to access their bunks does not in and of itself rise to the level of a constitutional violation. *See Walker v. Schult,* 717 F.3d at 130 n. 11 (2d Cir.2013) ( "[W]hile the claim [of a lack of ladders in a prison facility] in and of itself does not rise to the level of a constitutional violation, it must be considered as part of the total circumstances of [the plaintiff's] confinement."). Here, there are no allegations regarding the overall circumstances of confinement that would raise the ladder claim to one of constitutional concern.

As for Plaintiff's claim that there were no functioning distress signals in some of the cells, Plaintiff does not allege that he suffered any injury due to a lack of functioning distress signals. *See generally id.* Where a plaintiff claims no injury as a result of an alleged constitutional violation, the claim fails. *See Hamilton,* 2013 WL 3784153, at *6 (holding that inmate's constitutional claim failed insofar as he "failed to allege any concomitant injury"); *Simmons v. Cripps,* No. 12–CV–1061 (PAC), 2013 WL 1290268, at *20 (S.D.N.Y. Feb.15, 2013) (holding that inmate's claim of interference with his mail was

insufficient to state a constitutional claim because he failed to allege an injury arising therefrom).

To the extent the Court considers these claims on their merits although they are not administratively exhausted, Plaintiff fails to raise a viable legal claim or disputed issues of material fact. To the extent the Court considers Plaintiff's unexhausted claim on its merits, I respectfully recommend that summary judgment be granted in favor of these Defendants.

### F. PLAINTIFF'S NEGLIGENCE CLAIMS AGAINST LIEUTENANT PASLEY

Liberally construed, Plaintiff's Amended Complaint alleges that Defendant Lt. Pasley, acting within the scope of his employment as SHU Lieutenant, negligently failed to provide ladders and maintain working distress buttons in the SHU area at MDC during Plaintiff's 2012 incarceration there.

The Federal Tort Claims Act is the exclusive remedy available to Plaintiff for any wrongful act or omission committed by a federal employee within the scope of employment. *See U.S. v. Smith,* 499 U.S. 160, 165–66, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991) ("The remedy against the Government under the FTCA is exclusive of any other civil action or proceeding for money damages ... against the employee...."); *Celestine,* 403 F.3d at 80; *Castro v. U.S.,* 34 F.3d 106, 110 (2d Cir.1994) ("government employees [are] immune from common-law tort claims for acts committed within the scope of their employment"); *Brizard v. Terrell,* No. 11–CV–2274 (ARR), 2012 WL 3764497, at *2 (E.D.N.Y. Aug.27, 2012)."Providing a limited waiver of sovereign immunity, the FTCA affords the sole remedy, in the form of a suit against the United States, for a 'personal injury ... arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"*Brizard,* 2012 WL 3764497, at *2 (quoting 28 U.S.C. §§ 1346(b)(1), 2679); *see Celestine,* 403 F.3d at 80. Because Plaintiff's Amended Complaint alleges tort claims committed by Lt. Pasley within the scope of his federal employment, the FTCA provides the exclusive remedy for Plaintiff's negligence claims. "As the party seeking to invoke the jurisdiction of the court, Plaintiff bears the burden of demonstrating that subject matter jurisdiction is proper based on facts existing at the time the complaint was filed."*Brizard,* 2012 WL 3764497, at *2 (citing *Scelsa v. City Univ. of N.Y.,* 76 F.3d 37, 40 (2d Cir.1996)).

**\*26** The FTCA requires exhaustion of administrative remedies before an action can be instituted against the United States. Section 2675(a) of Title 28, United States Code states:

> An action shall not be instituted upon a claim against the United States for money damages for ... personal injury ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes of this section....

The presentment requirement of 28 U.S.C. § 2675(a) must be satisfied to obtain jurisdiction to sue the United States. *See Ford,* 2012 WL 4481739, at *8; *Romulus v. U.S.,* 983 F.Supp. 336, 338 (E.D.N.Y.1997), *aff'd,*160 F.3d 131 (2d Cir.1998) (per curiam). This requirement is unambiguous. *See*28 U.S.C. § 2675. ' "The FTCA exhaustion procedures must be adhered to strictly, and failure to comply will result in dismissal of the complaint.' " *Ford,* 2012 WL 4481739, at *8 (quoting *Connors,* 2003 WL 21087886, at *4).

For federal inmates, the presentment requirement of the FTCA is accomplished by filing a Form SF–95 with the BOP Regional Office for the facility where the claim arose.[7] *See*28 U.S.C. § 2401; *Brizard,* 2012 WL 3764497, at *3 (citing *Accollav. U.S. Gov't,* 668 F.Supp.2d 571, 573 (S.D.N.Y.2009)). None of Plaintiff's submissions makes any mention of any filing in relation to a negligence tort action in compliance with the FTCA, let alone a final denial in writing.

As discussed in Section III.D.2 and III.D.3, Plaintiff failed to administratively exhaust his claim relating to the lack of ladders or sufficient distress signals in the SHU. "The burden is on the Plaintiff to both plead and prove compliance with the [FTCA's] statutory requirements."In *re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir.1987) (citations omitted); *see Furman v. U.S. Postal Serv.,* 349 F.Supp.2d 553, 556 (E.D.N.Y.2004)." 'The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal court.'"*Skyers,* 2013 WL 3340292, at *12 (quoting *Celestine,* 405 F.3d at 82). As discussed above, Section II.E.1,

the FTCA's exhaustion requirements are jurisdictional. *See Ford,* 2012 WL 4481739, at \*8 (citing *Celestine,* 403 F.3d at 82).“In the absence of such compliance, a district court has no subject-matter jurisdiction over the plaintiff's claim.”*In re Agent Orange,* 818 F.2d at 214 (citing *Wyler v. U.S.,* 725 F.2d 156, 159 (2d Cir.1983)); *see Megna ex rel. Megna v. Food & Drug Admin.,* 377 Fed. Appx. 113, 115 (2d Cir.2010) (summary order) (affirming dismissal of the plaintiff's claim under the FTCA for lack of subject matter jurisdiction where the plaintiff failed to comply with the FTCA's exhaustion requirement).

**\*27** As discussed in Section n.C, FRCP 12(b)(1) is the proper rule under which to evaluate motions to dismiss in FTCA actions, as the FTCA requirement is jurisdictional. Plaintiff has failed to plead that he filed a Form SF–95 or that he complied with the FTCA's administrative requirements. Plaintiff has thus failed to show FTCA-required exhaustion.

Accordingly, I respectfully recommend that the negligence claim against Lt. Pasley be dismissed for lack of subject matter jurisdiction. *See Brizard,* 2012 WL 3764497, at \*3 (dismissing FTCA claim under FRCP 12(b)(1) because plaintiff failed to exhaust his administrative remedies); *Skyers,* 2013 WL 3340292, at \*12 (same).

## G. SOVEREIGN IMMUNITY AND CLAIMS AGAINST THE UNITED STATES, ITS OFFICERS AND AGENCIES

“It is well-settled that any lawsuit against an agent or employee of the United States in his/her official capacity is an action against the sovereign itself.”*Perez v. Hawk,* 302 F.Supp.2d 9, 18 (E.D.N.Y.2004) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)); *see Gray,* 2011 WL 2847430, at \*7 (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994)).“Sovereign immunity extends to officers of the United States when they ‘act in their official capacities.’ ”*Id.* (quoting *Dotson v. Griesa,* 398 F.3d 156, 177 (2d Cir.2005)).“Such actions against officers are ‘essentially a suit against the United States.’”*Id.* (quoting *Robinson,* 21 F.3d at 510). It is firmly established that “the United States, as sovereign, is immune from suit save as it consents to be sued.”*Id.* (citing *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981)).“ ‘Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.’”*Id.* (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994)).“It is the plaintiff's burden to demonstrate that sovereign immunity

has been waived.”*Id.* (quoting *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000)).

Without a waiver of sovereign immunity, a district court lacks subj ect matter jurisdiction to hear a claim. *See Liranzo v. U.S.,* 690 F.3d 78, 84 (2d Cir.2012) (“The United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.”); *Skyers,* 2013 WL 3340292, at \*8 (under FRCP 12(b)(1), dismissing claims against the United States, the BOP and individual defendants because sovereign immunity had not been waived); *Ford,* 2012 WL 4481739, at \*5 (dismissing claims under FRCP 12(b)(1) due to lack of waiver of sovereign immunity).

Plaintiff's Amended Complaint can be read to assert claims against the MDC and against Defendants Lieutenants Pasley and Grose, Warden Terrell, Dr. Newland, Mr. Ittayem, Officers Caballero, Hernandez, Jiminez and King in their official capacities, pursuant to *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Because sovereign immunity protects the United States, its officers and its agencies from such suits and there is no waiver of sovereign immunity here, subject matter jurisdiction is lacking over Plaintiff's claims against the United States, its agencies and officers in their official capacity. *See Jordan v. Federal Bureau of Prisons,* No. 09–CV–8561 (ALC), 2013 WL 1143617, at \*4 (S.D.N.Y. Mar.19, 2013) (dismissing claims against BOP, a federal prison and prison officer under FRCP 12(b)(1) because sovereign immunity had not been waived and the court therefore lacked subject matter jurisdiction); *Williams,* 418 F.Supp.2d at 100 (dismissing claims against federal officers “in their official capacities ... on the grounds of sovereign immunity”). The claims must be dismissed.

**\*28** As the MDC is a part of the BOP, a federal agency, Plaintiff's claims against the MDC should also be dismissed under FRCP 12(b)(1).*See Meyer,* 510 U.S. at 475, 473 S.Ct. at 1000; *Cohen v. Holder,* No. 11–CV–0003, 2011 WL 809773, at \*3 (E.D.N.Y. Mar. 1, 2011); *Williams v. Metro. Pet. Ctr.,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005) (dismissing *Bivens* claims against the MDC on the basis of sovereign immunity).

I respectfully recommend that Plaintiff's claim against the United States, its agencies and its officers in their official capacity be dismissed for lack of subject matter jurisdiction. *See Mims v. DOC,* No. 3:02–CV–250 (WIG), 2005 WL

2406005, at *4 (D.Conn.2005) (dismissing claims against Connecticut DOC based upon sovereign immunity).

## IV. CONCLUSION

For the reasons discussed above, I respectfully recommend that Defendants' motion to dismiss or for summary judgment be granted in its entirety. I respectfully recommend that summary judgment be entered in favor of Defendants on Plaintiff's claims for inadequate medical treatment, that there were no ladders or functioning distress signals in the Special Housing Unit at MDC, of unprofessional conduct against Lieutenants Grose and Pasley, and of failure to provide his medical records to him. I respectfully recommend that Plaintiff's claims under the FTCA against Lieutenant Pasley be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1). I respectfully recommend that Plaintiff's claims against the United States of America, the Bureau of Prisons and its officers in their official capacity be dismissed

under FRCP 12(b)(1). I also respectfully recommend that the motion for joinder be granted.

## V. OBJECTIONS

This report and recommendation will be filed electronically on August 19, 2013 and a copy sent by mail to Plaintiff Eric Steven Gay, # 64363–053, USP Canaan, U.S. Penitentiary, 3057 Easton Turnpike, P.O. Box 300, Waymart, PA 18472. Any objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Carol B. Amon at 225 Cadman Plaza East, Brooklyn, New York, 11201, by September 5, 2013. Failure to file objections within the specified time waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *Caidor v. Onandaga Cnty., 517 F.3d 601, 604 (2d Cir.2008)* ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Footnotes

1    On pages 3 and 6 of the R & R, Officer King is mistakenly omitted from the R & R's description of Gay's factual allegations. His name should be listed along with Officers Caballero, Jimenez and Hernandez on both pages.

2    Although "certain caveats apply" to the requirement of timely exhaustion, *see Giano v. Goord.* 380 F.3d 670, 677 (2d Cir.2004), the Court agrees with the R & R's determination that none of those caveats apply here, and Gay states nothing in his objection to suggest a contrary conclusion.

1    Plaintiff was instructed by the District Court that the Amended Complaint was to "completely replace the original Complaint." *See June 30, 2012 ECF Entry.* Plaintiff's compliance with this Order is discussed in Section I.C., *infra.* Allegations from the original Complaint are set forth here to provide a complete background.

2    The original Complaint also included Wendell Jenkins as a plaintiff. He was terminated from this action by the District Court on June 30, 2012. *See Docket No. 8.*

3    Plaintiff received his medical records on or about July 11, 2012, after having prepared the Amended Complaint on July 10, 2012, but before it was filed on July 13, 2012. *See Docket Nos. 9. 11.*

4    I do not discuss FRCP 12(b)(6) as I recommend relief be granted only under FRCP 12(b)(1) and 56 only.

5    Defendants have served the requisite Local Rule 56.2 Notice upon Plaintiff. *See Docket No. 39.*

6    "A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, 'the Court must limit its analysis to the four corners of the complaint.'"*Mena v. City of N.Y.,* No. 12–CV–6838 (GBD), 2013 WL 1352081, at *2 (S.D.N.Y. Apr.4, 2013) (quoting *Vassilatos v. Ceram Tech Int'l, Ltd.,* No. 92–CV–4574, 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993))." ' 'An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.'"*Mena,* 2013 WL 1352081, at *3 (quoting *Pan v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998)). The Second Circuit has held that " 'a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.'"*Mena,* 2013 WL 1352081, at *2 (quoting *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002))."With respect o the defense of failure to exhaust under the PLRA, 'if, as is usually the case, it is not clear from the face of the complaint whether the plaintiff exhausted, a Rule 12(b)(6) motion is not the proper vehicle.'"*Mena,* 2013 WL 1352081, at *3 (citing *McCoy,* 255 F.Supp.2d at 249).

7    The presentment requirement under the FTCA is different from that under the BOP's administrative remedy procedures. *See Brizard,* 2012 WL 3764497, at *3.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.                    21